The WILSON N. JONES MEMORIAL HOSPITAL d/b/a The Wilson N. Jones Medical Center, Appellant,

v.

Rose Marie AMMONS, Appellee.

No. 05–07–01430–CV.

Court of Appeals of Texas, Dallas.

Aug. 21, 2008.

Dena L. Mathis, Kyle, Campbell, Mathis
and Lucas L.L.P., Charles T. Frazier, Jr.,

Alexander Dubose Jones & Townsend LLP, Dallas, TX, for Appellant.

Dee Kelly, Jr., Kelly, Hart & Hallman, P.C., Shauna J. Wright, Kelly, Hart & Hallman, LLP, Fort Worth, TX, for Appellee.

Before Justices MORRIS, FITZGERALD, and LANG.

## OPINION

Opinion by Justice LANG.

In this appeal, we consider whether a non-patient's claim, pleaded as a negligence claim for injuries against a hospital, constitutes a "health care liability claim" pursuant to section 74.001(a)(13) of the Texas Civil Practice and Remedies Code, requiring the plaintiff to file an expert report pursuant to section 74.351(a) of the Texas Civil Practice and Remedies Code. We conclude the claim is a "health care liability claim" and an expert report is required. See TEX. CIV. PRAC. & REM.CODE ANN. §§ 74.001(a)(13), 74.351(a) (Vernon 2005 & Supp.2008).

The Wilson N. Jones Memorial Hospital d/b/a The Wilson N. Jones Medical Center ("WNJ") brings this interlocutory appeal, pursuant to section 51.014(a)(9) of the Texas Civil Practice and Remedies Code, from the trial court's partial denial of WNJ's motion to dismiss with prejudice the claims of Rose Marie Ammons. The trial court granted WNJ's motion to dismiss "as to any health care liability claims asserted by Plaintiff," but denied the motion to dismiss "as to Plaintiff's claims for negligence."

WNJ contends the trial court abused its discretion by (1) denying, in part, the motion to dismiss because all of Ammons's claims are health care liability claims governed by chapter 74; and (2) failing to grant the motion to dismiss "with prejudice," because dismissal with prejudice is the only remedy afforded by chapter 74. Ammons asserts two "appellee's issues," contending the trial court's order denying, in part, WNJ's motion to dismiss can be affirmed on either of the two other grounds presented to the lower court for consideration: (1) waiver, or (2) untimeliness of WNJ's third amended original answer.

We conclude the trial court abused its discretion by denying WNJ's motion to dismiss all of Ammons's claims because Ammons's "claims for negligence" are health care liability claims governed by chapter 74. In addition, we conclude such a dismissal must be with prejudice. Both of WNJ's issues are decided in its favor. We affirm the part of the trial court's order dismissing "any health care liability claims," reverse the part of the trial court's order denying dismissal of Ammons's "claims for negligence," render judgment dismissing with prejudice all of Ammons's claims, and remand for further proceedings consistent with this opinion as to WNJ's claim for attorney's fees.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On July 3, 2005, sixty-six-year-old Ammons accompanied her husband to WNJ's emergency department, where he sought medical treatment for a throat condition. On that same date, a male psychiatric patient, referred to herein as "M.M.," presented to WNJ's emergency department seeking transfer to a mental health facility. At the time of M.M.'s admission, a nurse practitioner medically evaluated M.M. and found him to be a potential threat to himself, but not to others. WNJ placed M.M. in a room in the emergency department to await medical clearance for transfer. In addition, WNJ arranged for a security guard to be stationed at the door of M.M.'s room.

At some point during his wait, M.M., who was six feet tall and weighed 220 pounds, suddenly charged the security guard on duty outside his room, Matt Whitworth. As Whitworth attempted to subdue M.M. in the hallway outside M.M.'s room, Ammons and her daughter turned a corner toward the exit of the hospital and came upon the two men. M.M. "donkey-kicked" Ammons in the stomach, knocking her to the floor.

Ammons filed this suit against WNJ on March 15, 2006, asserting a cause of action for negligence. WNJ filed a timely general denial answer. On May 11, 2007, Ammons filed a first amended petition alleging M.M. was a "mental patient" who had been admitted to WNJ "some fifteen times in the previous five years and had a documented history of violent and irrational behavior." Ammons asserted that on a previous visit to WNJ, M.M. had become so "unruly" that he was "restrained with leather straps and sedated." On the occasion at issue, according to Ammons's allegations, "the medical staff decided to move the unrestrained patient to a different room near the waiting area for the ER," a room immediately adjacent to the doorway previously used by Ammons to exit the hospital.

Her specific allegation as to the legal duty of WNJ was the following:

The Hospital, as the occupier of the premises, had a duty to keep the common areas of the Hospital in a reasonably safe condition for its invitees and to warn or protect such invitees from any dangers which it knew or should have known in the exercise of ordinary care presented an unsafe condition on the premises.

In addition, Ammons asserted Whitworth "understood his responsibilities as a security guard at the Hospital were to 'protect' the general public, 'keep them safe,' and 'make it a good environment for them to be in.'" Ammons contended both Whitworth and WNJ failed in their duties by not securing M.M. in a place where he could not harm or threaten harm to visitors. Further, Ammons asserted that "the Hospital failed to equip its security officer, Whitworth, with the appropriate tools and authority to control his violent patient and failed to train him properly in how to respond to situations such as that he faced on July 3, 2005."

On August 9, 2007, WNJ filed a no-evidence motion for summary judgment, requesting "summary judgment on Plaintiff's negligence claim." That motion was denied after a hearing on September 4, 2007. On September 10, 2007, WNJ filed a "Motion to Dismiss for Failure to File Expert Report" pursuant to section 74.351(b) of chapter 74.

In its motion to dismiss, WNJ contended, "The gravamen of Plaintiff's complaints is that WNJ failed to control and restrain the mental health patient. These claims are inseparable from the health care provided to the patient and are thus health care liability claims for which expert testimony is required." WNJ explained that, pursuant to chapter 74, in a suit involving a health care liability claim, if an expert report has not been served within the statutorily specified time period,[1] the court, on

---

1. Before September 1, 2005, section 74.351 required an expert report be filed "not later than the 120th day after the date the claim was filed." Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.01, 2003 Tex. Gen. Laws 847, 875 (amended 2005). The current version requires such report be filed "not later than the 120th day after the date the original petition was filed." Tex. Civ. Prac. & Rem.Code Ann. § 74.351 (Vernon Supp.2008). The previous version of section 74.351 applies to claims that accrued before the effective date of the current version. *See* Act of May 18, 2005, 79th Leg., R.S., ch. 635, § 2, 2005 Tex.

the motion of the affected physician or health care provider, shall enter an order that "dismisses the claim with respect to the physician or health care provider, with prejudice to the refiling of the claim." WNJ requested dismissal of Ammons's action with prejudice, attorney's fees, and costs of court. On September 11, 2007, WNJ filed a "Third Amended Original Answer and Affirmative Defenses," in which it asserted for the first time an "affirmative defense" that Ammons's claims are health care liability claims governed by chapter 74.

Ammons filed a "Request to Strike Defendant's Third Amended Answer and Response to Defendant's Motion to Dismiss" on September 18, 2007. In her request to strike, Ammons asserted (1) WNJ's late filing of its third amended original answer violated the trial court's scheduling order, and (2) WNJ "waived its right to the statutory defense" relating to Ammons's case being a health care liability claim. In addition, in her response to WNJ's motion to dismiss, Ammons asserted in part that WNJ's motion should be denied because "an expert report is only required when Plaintiff's claims are properly considered health care liability claims" and "[t]hat is not the case herein."

After hearing WNJ's motion to dismiss, the trial court signed an order that granted WNJ's motion to dismiss "as to any health care liability claims asserted by Plaintiff," but denied WNJ's motion "as to Plaintiff's claims for negligence." WNJ timely filed this appeal from the trial court's order under section 51.014(a)(9) of the Texas Civil Practice and Remedies Code, which provides in relevant part that a person may appeal from an interlocutory order of a district court that "denies all or part of the relief sought by a motion under

Section 74.351(b)." *See* TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(9) (Vernon 2008).

## II. WNJ'S MOTION TO DISMISS

### A. *Standard of Review*

 Generally, an appellate court reviews a trial judge's decision on a motion to dismiss a claim under section 74.351 of the Texas Civil Practice and Remedies Code for an abuse of discretion. *See, e.g., Baylor Univ. Med. Ctr. v. Rosa,* 240 S.W.3d 565, 569 (Tex.App.–Dallas 2007, pet. denied); *Cayton v. Moore,* 224 S.W.3d 440, 444 (Tex.App.–Dallas 2007, no pet.). A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner without reference to guiding rules or principles. *Cayton,* 224 S.W.3d at 444. A trial court has no discretion in determining what the law is or in applying the law to the facts. *Id.* at 445. A clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion. *Id.*

 However, when the resolution of an issue on appeal requires the interpretation of a statute, the reviewing court applies a de novo standard of review. *Vanderwerff v. Beathard,* 239 S.W.3d 406, 408 (Tex.App.–Dallas 2007, no pet.). Therefore, we review de novo the determination of whether a claim is a health care liability claim for the purpose of applying chapter 74 of the Texas Civil Practice and Remedies Code. *Id.; Boothe v. Dixon,* 180 S.W.3d 915, 919 (Tex.App.–Dallas 2005, no pet.); *Omaha Healthcare Ctr., L.L.C. v. Johnson,* 246 S.W.3d 278, 281 (Tex.App.–Texarkana 2008, pet. filed); *Christus Health v. Beal,* 240 S.W.3d 282, 284–85 (Tex.App.–Houston [1st Dist.] 2007, no

Gen. Laws 1590, 1591. However, which version of section 74.351 applies does not affect our analysis in this case. We cite to the current version in this opinion.

pet.); *see also Valley Baptist Med. Ctr. v. Stradley*, 210 S.W.3d 770, 772–73 (Tex. App.–Corpus Christi 2006, pet. denied) (characterization of claims as health care liability claims is threshold question in interlocutory appeal of denial of motion to dismiss under section 74.351(b)).

### B. Applicable Law

The Texas Supreme Court has stated:

Courts must take statutes as they find them. More than that, they should be willing to take them as they find them. They should search out carefully the intendment of a statute, giving full effect to all of its terms. But they must find its intent in its language, and not elsewhere.... They are not responsible for omissions in legislation. They are responsible for a true and fair interpretation of the written law. It must be an interpretation which expresses only the will of the makers of the law, not forced nor strained, but simply such as the words of the law in their plain sense fairly sanction and will clearly sustain.

*St. Luke's Episcopal Hosp. v. Agbor*, 952 S.W.2d 503, 505 (Tex.1997) (quoting *Simmons v. Arnim*, 110 Tex. 309, 324, 220 S.W. 66, 70 (Tex.1920)); *see also McIntyre v. Ramirez*, 109 S.W.3d 741, 745 (Tex.2003) (in determining Legislature's intent, court must consider "plain and common meaning" of statute's words); TEX. GOV'T CODE ANN. § 311.011(a) (Vernon 2005) ("Words and phrases shall be read in context and construed according to the rules of grammar and common usage.").

Section 74.351(a) of the Texas Civil Practice and Remedies Code requires that a claimant bringing a health care liability claim must, within a specified time period, serve on each party or the party's attorney one or more expert reports for each physician or health care provider against whom a claim is being asserted. TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(a). Under section 74.351(b):

If, as to a defendant physician or health care provider, an expert report has not been served within the period specified by Subsection (a), the court, on the motion of the affected physician or health care provider, shall, subject to [certain exceptions inapplicable in this case], enter an order that:

(1) awards to the affected physician or health care provider reasonable attorney's fees and costs of court incurred by the physician or health care provider; and

(2) dismisses the claim with respect to the physician or health care provider, with prejudice to the refiling of the claim.

*Id.* § 74.351(b).

A "health care liability claim" is defined as:

a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.

TEX. CIV. PRAC. & REM.CODE ANN. § 74.001(a)(13). A claimant, as defined in chapter 74, is "a person, including a decedent's estate, seeking or who has sought recovery of damages in a health care liability claim." *Id.* § 74.001(a)(2). Further, the definition of "claimant" in chapter 74 provides, "All persons claiming to have sustained damages as the result of the bodily injury or death of a single person are considered a single claimant." *Id.* "Health care provider" is defined in chapter 74 as "any person, partnership, profes-

sional association, corporation, facility, or institution duly licensed, certified, registered, or chartered by the State of Texas to provide health care," including, in relevant part, "a health care institution." *Id.* § 74.001(a)(12). In addition, the term "health care provider" includes, in relevant part, "an employee, independent contractor, or agent of a health care provider or physician acting in the course and scope of the employment or contractual relationship." *Id.*

■ In determining whether a claim is subject to the requirements of chapter 74, we focus on the nature and essence of the claim rather than the way it was pleaded. *See Diversicare Gen. Partner, Inc. v. Rubio,* 185 S.W.3d 842, 848 (Tex.2005); *Lee v. Boothe,* 235 S.W.3d 448, 451 (Tex.App.–Dallas 2007, pet. denied); *Groomes v. USH of Timberlawn, Inc.,* 170 S.W.3d 802, 805 (Tex.App.–Dallas 2005, no pet.). We consider the alleged wrongful conduct as well as the duties allegedly breached. *Lee,* 235 S.W.3d at 451. We also consider whether expert testimony is necessary to show breach of an applicable standard of care. *Id.* However, a claim may be a health care liability claim and not require expert testimony to prevail at trial. *See Murphy v. Russell,* 167 S.W.3d 835, 838 (Tex.2005).

■ A plaintiff cannot avoid the requirements of chapter 74 by attempting to recast a health care liability claim as a different cause of action through artful pleading. *Diversicare,* 185 S.W.3d at 851. If the factual allegations are related to the medical treatment provided by the defendant and constitute "an inseparable part of [the defendant's] rendition of medical services," then the plaintiff's claim is a health care liability claim. *Id.* at 848; *Lee,* 235 S.W.3d at 451.[2]

**2.** For examples of cases in which courts concluded a plaintiff's claim constituted a health care liability claim, see the following: *Diversicare,* 185 S.W.3d at 848 (patient's claim for assault by another patient was health care liability claim because supervision of patients was part of claimant's health care); *Vanderwerff,* 239 S.W.3d at 409 (patient's claim for assault against chiropractor was health care liability claim because questions raised by pleading concerned scope of chiropractic exam); *Groomes,* 170 S.W.3d at 806 (underlying nature of patient's claims derived from doctor's decisions to administer medication and discontinue discharge and were therefore health care liability claims); *Outpatient Ctr. for Interventional Pain Mgmt. v. Garza,* Nos. 13–07–00411–CV and 13–07–00762–CV, 2008 WL 2525609, at *3–*4 (Tex.App.–Corpus Christi June 26, 2008, no pet. h.) (mem. op.) (patient's premises liability claims against surgery center for employees' alleged failure to properly lock and secure her wheelchair were health care liability claims because they were "inseparable from the rendition of medical services"); *Holguin v. Laredo Reg'l Med. Ctr., L.P.,* No. 04–07–00152–CV, 2008 WL 312716, at *5 (Tex.App.–San Antonio Feb. 6, 2008, no pet.) (patient's claims against hospital for negligent hiring, training, and supervision of nurse who sexually assaulted patient were health care liability claims because they were based on hospital's failure to protect its patients); *Clark v. Tirr Rehab. Ctr.,* 227 S.W.3d 256, 263 (Tex.App.–Houston [1st Dist.] 2007, no pet.) (negligence claim by patient against physical therapist was health care liability claim because failure to supervise patient was inseparable part of health care service being rendered); *NCED Mental Health, Inc. v. Kidd,* 214 S.W.3d 28, 37 (Tex. App.–El Paso 2006, no pet.) (claims by patient who was sexually assaulted by mental health technician were health care liability claims because they were based on judgments about care, treatment, and protection of patients); *Oak Park, Inc. v. Harrison,* 206 S.W.3d 133, 140–41 (Tex.App.–Eastland 2006, no pet.) (claims of patient who was slammed against wall as nurses subdued another patient were health care liability claims, because they related to health care provided to claimant); *Parker v. CCS/Meadow Pines, Inc.,* 166 S.W.3d 509, 513 (Tex.App.–Texarkana 2005, no pet.) (claims by patient who suffered injuries related to restraints used on him were health care

Pursuant to section 51.014(a)(9) of the Texas Civil Practice and Remedies Code, a person may appeal from an interlocutory order of a district court that "denies all or part of the relief sought by a motion under Section 74.351(b)." Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(9). Section 51.014(a) is strictly construed as a narrow exception to the general rule that only final judgments are appealable. *Tex. A & M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 841 (Tex.2007); *Hudak v. Campbell*, 232 S.W.3d 930, 931 (Tex.App.–Dallas 2007, no pet.) (citing *Bally Total Fitness Corp. v. Jackson*, 53 S.W.3d 352, 355 (Tex.2001)).

### C. Ammons's "Appellee's Issues"

We begin our analysis by addressing Ammons's two "appellee's issues." Both issues were raised by Ammons in her September 18, 2007 "Request to Strike Defendant's Third Amended Answer and Response to Defendant's Motion to Dismiss." They are actually arguments Ammons asserts to support her position the trial court was not in error in denying WNJ's motion to dismiss as to the negligence claim.

### 1. Waiver of Right to Dismissal

■ First, Ammons contends the trial court's order denying the motion to dismiss as to the "claims for negligence" can be separately affirmed on the basis that WNJ waived its right to seek dismissal pursuant to section 74.351 by not asserting that "defense" in a timely manner. WNJ contends the trial court implicitly rejected Ammons's waiver argument because it granted, in part, WNJ's motion to dismiss. Further, WNJ argues it did not waive its right to seek dismissal and the trial court did not abuse its discretion in failing to find waiver.

A trial court's ruling can be made either expressly or implicitly. *See* Tex.R.App. P. 33.1(a)(2)(A); *Well Solutions, Inc. v. Stafford*, 32 S.W.3d 313, 316 (Tex.App.–San Antonio 2000, no pet.). A ruling is implicit if it is unexpressed, but capable of being understood from something else. *Well Solutions*, 32 S.W.3d at 316. It follows that the trial court could not have granted WNJ's motion to dismiss as to "any healthcare liability claims" asserted by Ammons without also rejecting Ammons's waiver argument. *See Salinas v. Rafati*, 948

---

liability claims because they required reference to standards by which mental health institutions restrain patients).

By contrast, examples of cases in which courts concluded a plaintiff's claim was not a health care liability claim include: *McAllen Work Rehab. Ctr. v. Gomez*, No. 13–07–00466–CV, 2008 WL 2930306, at *3 (Tex.App.–Corpus Christi July 31, 2008, no pet. h.) (mem. op.) (claim of plaintiff injured while participating in Tai Chi class did not constitute safety claim directly related to health care); *Omaha Healthcare*, 246 S.W.3d at 287 (negligence claims arising from death of nursing home patient due to spider bite were not health care liability claims because they stemmed from alleged departure from safety standards, generally, rather than treatment on behalf of any patient); *Christus Health*, 240 S.W.3d at 291 (patient's negligence claims based on collapse of bed were not health care

liability claims because provision of safe bed did not directly relate to patient's treatment for drug addiction); *Stradley*, 210 S.W.3d at 775–76 (claims of patient who fell from treadmill at fitness center were not health care liability claims because doctor's recommendation of regular exercise was not sufficiently related to rendition of health care); *Shults v. Baptist St. Anthony's Hosp. Corp.*, 166 S.W.3d 502, 505 (Tex.App.–Amarillo 2005, pet. denied) (claims of patient injured by sharp paint chip on bathroom floor were not health care liability claims because presence of paint chip was not inseparable part of medical services); *Rogers v. Crossroads Nursing Serv., Inc.*, 13 S.W.3d 417, 420 (Tex.App.–Corpus Christi 1999, no pet.) (claim of patient injured when supply bag placed on table by home health care company employee fell on him was governed by ordinary standard of care and was not health care liability claim).

S.W.2d 286, 288 (Tex.1997) (in granting motion to disregard jury findings, trial court automatically denied motion for judgment on those findings and motions to amend pleadings). Therefore, we conclude the trial court made an implied ruling against Ammons on her waiver argument. *See id.; Parker v. Barefield,* 206 S.W.3d 119, 121 (Tex.2006) (request for leave to amend pleadings was effectively denied when trial court granted special exceptions and dismissed case); *Hardman v. Dault,* 2 S.W.3d 378, 381 (Tex.App.–San Antonio 1999, no pet.) (by proceeding with non-jury trial, trial court implicitly overruled party's motion to strike non-jury setting). Accordingly, Ammons's contention is misplaced that her waiver argument supports the trial court's denial of the motion to dismiss her negligence claims.

### 2. Untimely Filing of Pleading Asserting Chapter 74 as Affirmative Defense

■ Second, Ammons asserts WNJ "did not timely file its pleading asserting Chapter 74 as an affirmative defense." Ammons contends WNJ's "pleading found in the record raising Chapter 74" was filed without leave of court and "should have been stricken and not considered part of the appellate record." Because the "affirmative defense" of applicability of chapter 74 was not properly pleaded, Ammons asserts, "[WNJ] had no basis upon which to pursue its motion to dismiss." WNJ responds, "Asserting that Ammons'[s] suit is a health care liability claim subject to Chapter 74 is not an affirmative defense." Further, WNJ asserts, "Even if it were a[sic] affirmative defense, WNJ's Third Amended Answer raises this very issue."

As with the "waiver" assertion by Ammons, the trial court could not have granted WNJ's motion to dismiss as to "any healthcare liability claims" asserted by Ammons without also rejecting Ammons's argument that WNJ's motion to dismiss was unsupported by timely filed pleadings. *See Salinas,* 948 S.W.2d at 288. Accordingly, we conclude the trial court made an implied ruling against Ammons on that issue. *See id.; Barefield,* 206 S.W.3d at 121; *Hardman,* 2 S.W.3d at 381. To the extent Ammons's "Appellee's Issue No. 2" can be construed to ask us to go further and decide the trial court erred in failing to specifically grant Ammons's motion to strike the "late filed pleading," we need not do so. No authorities are cited by Ammons on this proposition demonstrating why we should address the motion to strike where Ammons makes no claim the trial court erred in denying WNJ's motion to dismiss the negligence claim. Any such argument is waived for failure to adequately brief it for this Court. *See* Tex. R.App. P. 38.1(h), 38.2(a)(1).

### D. Denial of WNJ's Motion to Dismiss as to "Claims for Negligence"

■ In its first issue, WNJ contends the trial court "abused its discretion in denying, in part, the motion to dismiss because all of Ammons'[s] claims are health care liability claims governed by chapter 74." WNJ asserts chapter 74 defines a health care liability claim as a cause of action against a health care provider for a claimed departure from accepted standards of care resulting in injury to a claimant. According to WNJ, "This is exactly what Ammons has asserted against WNJ." Therefore, WNJ asserts, Ammons was required to submit an expert report within the statutorily designated time period. Because Ammons did not file such a report, WNJ argues, the trial court was required to dismiss her suit under section 74.351(b).

Ammons argues this case has nothing to do with WNJ's rendition of health care services to her or her assailant, M.M. Am-

mons contends this is "a simple negligence case founded on the actions, or lack thereof, of WNJ in *failing to provide a safe environment*" to her when she entered its premises on July 3, 2005.

### 1. Ammons's Status as Claimant Under Chapter 74

We begin by addressing Ammons's contention that she is not a "claimant" under chapter 74. In order to reach our conclusion on this proposition, we must analyze the current statute, chapter 74, and its predecessor.

As both parties acknowledge, the predecessor statute to chapter 74, former article 4590i, defined "health care liability claim" as:

> a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care or health care or safety which proximately results in injury or death *of the patient,* whether *the patient's claim or cause of action* sounds in tort or contract.

Act of May 30, 1977, 65th Leg., R.S., ch 817, § 1.03(a)(4), 1977 Tex. Gen. Laws 2039, 2041 (former TEX.REV.CIV. STAT. ANN. art. 4590i, section 1.03(a)(4) (Vernon Supp. 2003)), *repealed and codified as amended by* Act of June 2, 2003, 78th Leg., R.S., ch. 204, §§ 10.01, 10.09, 2003 Tex. Gen. Laws 847, 864, 884 (current version at TEX. CIV. PRAC. & REM.CODE ANN. § 74.001(a)(13)) (hereinafter referred to as "former article 4590i") (emphasis added).

The current statute defines "health care liability claim" as follows:

> a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury or death *of a claimant,* whether the *claimant's claim or cause of action* sounds in tort or contract.

TEX. CIV. PRAC. & REM.CODE ANN. § 74.001(a)(13) (emphasis added).

According to Ammons, the predicate question in this appeal is whether the use of the term "claimant" in chapter 74 was intended to enlarge the scope of the term "patient" found in former article 4590i. Ammons asserts, "The term 'claimant' is critical to this appeal because only 'claimants' have the obligation to file expert reports under § 74.351." WNJ argues, "Although the predecessor statute to Chapter 74 required a health care liability claim to be brought by a 'patient,' this is no longer true." According to WNJ, "Ammons is a[c]hapter 74 claimant subject to its requirements, including the requirement of filing an expert report."

Ammons contends, "The logical reason for this change in language—and the reason there is no legislative history on the subject—is because the change was intended to cover claims of a decedent's estate in the definition of 'patient.' There is no mention of the decedent's estate in art. 4590i."[3] However, as Ammons acknowledges, no reported case addresses whether an injured non-patient can constitute a claimant under chapter 74. *But cf. Pallares v. Magic Valley Elec. Co-, Inc.,* 267 S.W.3d 67, 73, No. 13–07–559–CV, 2008 WL 1973929, at *5 (Tex.App.–Corpus

---

**3.** The legislative history of chapter 74 offers no guidance on the Legislature's intent in using the word "claimant," rather than "patient" in the current statute. *See* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.11, 2003 Tex. Gen. Laws 884, 885 (stating findings and purpose, generally, with respect to chapter 74).

Christi May 8, 2008, pet. filed) (in fraud action relating to doctor's charges, electric cooperative that maintained self-insured health plan was not chapter 74 claimant where no person directly sustained "injury or death" proximately caused by doctor's treatment and cooperative did not undergo treatment by doctor).

We conclude that the essence of Ammons's contentions that the current statutory definition of "claimant" is limited to patients and their estates is contrary to the established rules of statutory construction. As stated above, chapter 74 defines "claimant" as "a person, including a decedent's estate, seeking or who has sought recovery of damages in a health care liability claim." TEX. CIV. PRAC. & REM.CODE ANN. § 74.001(a)(2). "Patient" is not included within the definition of "claimant" in the current version of the statute, as it was in the prior version. *Id.* Moreover, neither "person" nor "patient" is defined in chapter 74. Chapter 74 provides undefined terms have "such meaning as is consistent with the common law." *Id.* § 74.001(b).

Further, in defining "claimant" in chapter 74, the Legislature used the word "including," which makes any components listed in the definition nonexclusive. *See* TEX. GOV'T CODE ANN. § 311.005(13) (Vernon 2005) (" 'Includes' and 'including' are terms of enlargement and not of limitation or exclusive enumeration, and use of the terms does not create a presumption that components not expressed are excluded."); *see also Pro Path Servs., L.L.P. v. Koch,* 192 S.W.3d 667, 671 (Tex.App.–Dallas 2006, pet. denied) (in defining "health care

provider" in chapter 74, Legislature used "including," which makes list nonexclusive). Therefore, the use of the word "including" in the definition of "claimant" does not express an intent to limit who can be claimants under chapter 74 to a particular group. *See* TEX. GOV'T CODE ANN. § 311.005(13); *Pro Path,* 192 S.W.3d at 671.

Additionally, while "medical care" and "health care" are both defined in chapter 74 in terms of acts relating to "patients,"[4] the second clause of the definition of "claimant" provides that "[a]ll persons claiming to have sustained damages as the result of the bodily injury or death of a single *person* are considered a single claimant." *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.001(a)(2) (emphasis added). The absence of the word "patient" from this clause of the definition of "claimant" demonstrates the intent of the Legislature to include claims relating to injury or death of a person who is not a patient. This result was not possible under former article 4590i, which specifically denominated the death or injury to be that of a "patient." Likewise, the current statute, in contrast to former article 4590i, specifies that a claimant includes a "decedent's" estate, rather than a "patient's" estate, thus allowing for the possibility that the decedent was not a patient. *Id.*

Finally, chapter 74 defines "representative" as "the spouse, parent, guardian, trustee, authorized attorney, or other authorized legal agent of the *patient or claimant." Id.* § 74.001(a)(25) (emphasis

**4.** Under chapter 74, " '[h]ealth care' means any act or treatment performed or furnished, or that should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement." TEX. CIV. PRAC. & REM.CODE ANN. § 74.001(a)(10). " 'Medical care' means any act defined as

practicing medicine under Section 151.002, Occupations Code, performed or furnished, or which should have been performed, by one licensed to practice medicine in this state for, to, or on behalf of a patient during the patient's care, treatment, or confinement." *Id.* § 74.001(a)(19).

added). This language, which connects the terms "patient" and "claimant" with the disjunctive term "or," indicates recognition by the Legislature that the terms "patient" and "claimant" do not necessarily refer to the same category of persons. *Id.*; *see also Bd. of Ins. Comm'rs v. Guardian Life Ins. Co. of Tex.*, 142 Tex. 630, 635, 180 S.W.2d 906, 908 (Tex.1944) ("or" ordinarily used in structure of language for strictly disjunctive purpose). Based on the plain and common meaning of the words used in chapter 74, we cannot conclude Ammons falls outside the meaning of the term "claimant" as defined in the statute.

### 2. Health Care Providers Under Chapter 74

Next, we consider Ammons's argument that "Officer Whitworth and the administrators of the Hospital were not health care providers." WNJ contends, "All of the persons complained of by Ammons as having failed to control [M.M.] are either employees of WNJ or independent contractors to WNJ, including Whitworth and other security personnel." Therefore, WNJ argues, "each of these persons is a health care provider" and claims based on the acts or omissions of such persons constitute health care liability claims "if, as in this case, the allegations are based on claimed departures from accepted standards of health care." Ammons asserts, "[WNJ] suggests that if a person is employed by the Hospital in any capacity, whatever he/she does to harm someone else is automatically related to health care and necessitates the filing of an expert report. This simply cannot be the case." Ammons cites no authority for her argument, nor does she provide citations to the record.

Our focus is upon Ammons's first amended petition where she complained of the alleged actions of Officer Whitworth,

administrators, and WNJ's "medical staff," among others. Importantly, she asserts the "medical staff" made the decision to "move the unrestrained patient [M.M.] to a different room near the waiting area for the ER," a room "immediately adjacent to the doorway previously used by Mrs. Ammons to exit the Hospital." It is not contested these persons alleged by Ammons to have acted negligently were either employees of WNJ or independent contractors of WNJ. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(12)(B) ("Health care provider" includes employee or independent contractor of health care provider or physician acting in course and scope of employment or contractual relationship). Ammons does not assert such individuals were acting outside the course and scope of the employment or contractual relationship. *See id.* Accordingly, based on the plain language of section 74.001(a)(12), we conclude such persons described in Ammons's first amended petition are health care providers under chapter 74. *See id.*; *Valley Baptist Med. Ctr. v. Azua*, 198 S.W.3d 810, 814 (Tex.App.–Corpus Christi 2006, no pet.) (orderly employed by health care institution was health care provider under chapter 74).

### 3. Nature of Ammons's Claims

Finally, we address WNJ's contention that Ammons's claims are health care liability claims because they are "inseparable from the health care provided to the psychiatric patient from whom she alleges WNJ failed to protect her." According to WNJ, Ammons's "true complaint focuses on the restraint of [M.M.], which is health care related to [M.M.]." In support of its argument, WNJ relies heavily on *Diversicare* and contends the Texas Supreme Court held in that case "that allegations identical to those asserted by Ammons constituted health care liability claims."

In *Diversicare,* Rubio, a patient in a nursing home facility, claimed the nursing home's negligence in failing to provide her with adequate supervision and nursing services proximately caused her injuries from a sexual assault by another patient. *Diversicare,* 185 S.W.3d at 845. The Texas Supreme Court concluded Rubio's claims were causes of action for departures from accepted standards of professional health care and safety. *Id.* In reaching its conclusion, the *Diversicare* court reasoned Rubio's causes of action were claims for breaches of the standard of care for a health care provider "because the supervision of Rubio and the patient who assaulted her and the protection of Rubio are inseparable from the health care and nursing services provided to [Rubio]." *Id.* at 849. In addition, the court in *Diversicare* concluded that "because the supervision of Rubio and the patient who assaulted her are inseparable from the accepted standards of safety applicable to the nursing home in this case," Rubio's claims fell under the safety element of the applicable statute, former article 4590i. *Id.* at 855. Therefore, that court concluded, the causes of action constituted health care liability claims under former article 4590i. *Id.* at 845.

According to WNJ, "All reported cases decided after *Diversicare* involving claims relating to control, supervision and/or restraint of a patient and inadequate security policies have been determined to be health care liability claims requiring the filing of an expert report within the statutory deadlines of [c]hapter 74." *See Holguin,* 256 S.W.3d at 356 (patient sexually assaulted by nurse at medical center); *Cline v. Living Ctrs. of Tex., Inc.,* No. 13–05–187–CV, 2007 WL 765450, at *2 (Tex.App.–Corpus Christi Mar. 15, 2007, pet. denied) (mem. op.) (patient sexually assaulted by other patient); *Emeritus Corp. v. Highsmith,* 211 S.W.3d 321, 328 (Tex.App.–San Anto-

nio 2006, pet. denied) (patient injured in altercation with other patient); *Sw. Mental Health Ctr. v. Olivo,* No. 04–06–00256–CV, 2006 WL 2682245, at *1 (Tex.App.–San Antonio Sept.20, 2006, no pet.) (mem. op.) (sexual assault of patient by employee of mental health facility); *Oak Park,* 206 S.W.3d at 140–41 (patient in common area of health care facility slammed against wall while nurses restrained psychiatric patient); *Parker,* 166 S.W.3d at 513 (patient of mental health facility injured by restraints). WNJ argues the same conclusion is warranted here because "[t]he gravamen of Ammons'[s] complaint is that WNJ failed to supervise, control, and restrain [M.M.]."

Ammons asserts that in *Diversicare,* the court recognized that Rubio, the patient/plaintiff under former article 4590i, was herself a health care recipient, and her claim emanated from the health care being provided by the nursing home *to her.* Ammons argues the facts of *Diversicare* and the cases cited by WNJ are "a far cry" from those of the instant case, because Ammons was not receiving health care services of any kind when she was assaulted. We cannot agree with this reasoning. Former article 4590i, applicable in *Diversicare,* referred expressly to "patient." As we concluded above, chapter 74, applicable in the case before us, does not require that a "claimant" be a patient.

Continuing with her argument, Ammons asserts her claim does not rest upon WNJ's provision of care to M.M. According to Ammons, her complaint is that "the Hospital did not keep its common areas in a reasonably safe condition the day Ammons accompanied her husband to WNJ.... The forseeability [sic] of [M.M.'s] assault on Ammons is the paramount issue in Ammons'[s] case; the Hospital's breach of its standard of care in

caring for him is not." We disagree with these arguments, as well.

The allegations in Ammons's first amended petition make clear M.M. was at WNJ on the date of the incident for the purpose of receiving health care services. The medical staff at WNJ ordered lab tests on M.M. and made a determination as to where to place him as he awaited transfer. A security guard was stationed at the door to his room. Although M.M. had been restrained on at least one other visit to WNJ, on this occasion, no WNJ personnel decided to restrain or otherwise restrict him. The following conclusion of the Texas Supreme Court in *Diversicare* is instructive for purposes of making our conclusion:

> Some patients require enhanced supervision and additional staff or physical restraints to protect them from injuring themselves and others or to protect them from other patients, while other patients do not require such protections. The nature and intensity of care and treatment, including professional supervision, monitoring, assessment, quantities and types of medication, and other medical treatment are judgments made by professionals trained and experienced in treating and caring for patients and the patient populations in their health care facilities.

*Diversicare*, 185 S.W.3d at 850.

We conclude the decision as to how and where to hold M.M. until he could be transferred for further treatment was a "health care" decision. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.001(a)(10). Because the critical acts alleged by Ammons focus on alleged failures with respect to that health care decision, proving any of Ammons's claims would require establishment of the standards of care regarding the supervision and restraint of psychiatric patients. *See Parker*, 166 S.W.3d at 513.

Establishment of such standards would require expert testimony. *See Diversicare*, 185 S.W.3d at 851 ("general public does not know whether physical restraint is required to prevent assaults by a resident"); *see also Lee*, 235 S.W.3d at 451 (in determining whether claim is health care liability claim, courts consider whether expert testimony is necessary to show breach of applicable standard of care). Based on the above analysis, we further conclude the underlying nature of Ammons's negligence claims is "so inextricably interwoven with the rendition of health care services" that such claims constitute health care liability claims. *See Vanderwerff*, 239 S.W.3d at 408–09; *Parker*, 166 S.W.3d at 513. Because the record shows no expert report was filed by Ammons with respect to her "claims for negligence," the trial court was required to dismiss such claims and abused its discretion in not doing so. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351; *Lewis v. Funderburk*, 253 S.W.3d 204, 207 (Tex.2008). WNJ's first issue is decided in its favor.

### E. Dismissal of Healthcare Liability Claims With Prejudice

In its second issue, WNJ asserts the trial court "abused its discretion in failing to grant the motion to dismiss with prejudice because the only remedy afforded by § 74.351(b) is dismissal with prejudice."

The trial court's October 9, 2007 order granted WNJ's motion to dismiss "as to any health care liability claims asserted by Plaintiff," but did not address whether such dismissal was with or without prejudice. Under the clear language of section 74.351(b), if a plaintiff does not timely serve an expert report, the court must, on the affected defendant's motion, dismiss the case with prejudice. TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(b); *Romero v.*

*Lieberman,* 232 S.W.3d 385, 388 (Tex. App.–Dallas 2007, no pet.); *see also Lewis,* 253 S.W.3d at 207. The parties cite no exceptions to this statutory requirement. Therefore, we conclude the trial court abused its discretion to the extent its dismissal of "any healthcare liability claims asserted by Plaintiff" was not with prejudice. WNJ's second issue is decided in its favor.

### III. CONCLUSION

We conclude the trial court erred by denying, in part, WNJ's motion to dismiss because Ammons's "claims for negligence" are health care liability claims governed by chapter 74. Further, we conclude the trial court abused its discretion to the extent its dismissal of "any health care claims asserted by Plaintiff" was not with prejudice. We decide in favor of WNJ on both of its issues.

We affirm the part of the trial court's order dismissing "any health care liability claims," reverse the part of the trial court's order denying dismissal of Ammons's "claims for negligence," render judgment dismissing with prejudice all of Ammons's claims, and remand for further proceedings consistent with this opinion as to WNJ's claim for attorney's fees.