Affirmed and Opinion filed June 24,
2010.

 

In
The

Fourteenth
Court of Appeals



NO. 14-10-00091-CV



Texas West Oaks
Hospital, LP and Hospital HoldingS LLC,

Appellants 

v.

Frederick
Williams, Appellee 



On Appeal from
the 234th District Court

Harris County, Texas

Trial Court
Cause No. 2008-22720



 

OPINION

Appellants Texas West Oaks Hospital, LP and Hospital
Holdings LLC (collectively “West Oaks”) appeal from the trial court’s order
denying the motion to dismiss appellee Frederick Williams’s claims for failure
to file an expert report under chapter 74 of the Civil Practice and Remedies
Code.  We affirm.

BACKGROUND

Mario Vidaurre, a man with a history of paranoid
schizophrenia and violent outbursts, was admitted to West Oaks for psychiatric
treatment in June 2007.  Based on his history and conduct at the facility,
Vidaurre was placed on one-to-one observation, and Williams was one of the
technicians assigned to observe and monitor Vidaurre’s behavior.  During Williams’s
shift, Vidaurre became agitated, and in an effort to calm Vidaurre, Williams
took him to a fenced-in area behind the hospital to smoke a cigarette.  The
door locked behind them, Williams had no access to any type of emergency alarm
or call button, and there is no monitored security camera covering that area.  While
in the smoking area, Vidaurre and Williams had a physical altercation; Williams
was injured, and Vidaurre died.

Vidaurre’s estate sued West Oaks and later Williams
as well, alleging failure to properly treat, care for, and assess the medical
situation of Vidaurre.  Williams cross-claimed against West Oaks, alleging that
West Oaks was negligent in the following manner:

a.     
Failing
to properly train Williams to work at West Oaks’ premises, including warning
him of the inherent dangers of working with patients with the conditions and
tendencies that Mario Vidaurre possessed; 

b.     
Failing
to adequately supervise West Oaks’ employees, including Williams, while working
with patients with conditions and tendencies that Mario 
Vidaurre possessed; 

c.     
Failing
to provide adequate protocol to avoid and/or decrease the severity of
altercations between its employees, such as Williams, and patients;

d.      Failing
to provide its employees, including Williams, with adequate emergency
notification devices to alert other employees of altercations in which
assistance is needed;

e.     
Failing
to warn Williams of the dangers that West Oaks knew or should have known were
associated with working with patients such as Mr. Vidaurre; and

f.       Failing
to provide a safe workplace for its employees, including Williams.

West Oaks filed a motion to dismiss Williams’s
cross-claims because he did not file an expert report under section 74.351(a)
of the Civil Practice and Remedies Code.  See Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a)–(b) (Vernon
Supp. 2009).  The trial court denied the motion, and West Oaks has brought an
interlocutory appeal challenging the trial court’s order.  See id. §
51.014 (a)(9) (Vernon 2008).

ANALYSIS

Chapter 74 of the Civil Practice and Remedies Code
requires a “claimant” bringing a “health care liability claim” to file an
expert report within 120 days of filing the claim.  Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a).  A
“claimant” is defined as “a person, including the decedent’s estate, seeking or
who has sought recovery of damages in a health care liability claim,” and “[a]ll
persons claiming to have sustained damages as the result of the bodily injury
or death of a single person are considered a single claimant.”  Id. § 74.001(a)(2)
(Vernon 2005).  A “health care liability claim” is “a cause of action against a
health care provider or physician for treatment, lack of treatment, or other
claimed departure from accepted standards of medical care, or health care, or
safety or professional or administrative services directly related to health
care, which proximately results in injury to or death of a claimant, whether
the claimant’s claim or cause of action sounds in contract or tort.”  Id.
§ 74.001(a)(13).  Finally, “health care” means “any act or treatment performed
or furnished, or that should have been performed or furnished, by any health
care provider for, to, or on behalf of a patient during the patient’s medical
care, treatment, or confinement.”  Id. § 74.001(a)(10).  

If a claimant with a health care liability claim does
not comply with the expert report requirement, the trial court must dismiss the
claim upon request of the defendant.  Id. § 74.351(b).  When, as here,
the trial court rules on a motion to dismiss based on statutory interpretation,
our review is de novo.  See Smalling v. Gardner, 203 S.W.3d 354, 363
(Tex. App.—Houston [14th Dist.] 2005, pet. denied).  West Oaks argues that
Williams was required to comply with chapter 74 because he is a claimant and
his claims constitute health care liability claims.  We need not determine
whether Williams is a claimant because we conclude his claims are not health
care liability claims.  

A claim is a health care liability claim if it alleges
a breach of accepted standards of medical care or if the claim is inseparable
from the rendition of medical care.  See Marks v. St. Luke’s Episcopal Hosp.,
No. 07-0783, ___ S.W.3d ___, 2009 WL 2667801, at *4 (Tex. 2009);  Diversicare
Gen. Partner, Inc. v. Rubio, 185 S.W.3d 842, 848 (Tex. 2005).  In
determining whether a claim is inseparable from the rendition of medical care, we
consider factors such as (1) whether specialized knowledge of a medical expert
may be necessary to prove the claim, (2) whether a specialized standard in the
health care community applies to the alleged circumstances, and (3) whether the
negligent act involves medical judgment related to the patient’s care or
treatment.  Marks, 2009 WL 2667801, at *4.  The source of the duty
allegedly breached is also a factor to be considered.  See id. at *7
(considering the “source of the negligence” in analyzing whether claim is a
health care liability claim); Diversicare, 185 S.W.3d at 851 (“In
addition, we focus on the essence of Rubio’s claim and consider the alleged
wrongful conduct and the duties allegedly breached” in determining if claim is a
health care liability claim).  We look to the allegations in the petition to
determine the gravamen of the complaint, regardless of how the complaint is
labeled.  See Marks, 2009 WL 2667801, at *8; Diversicare,
185 S.W.3d at 854.

Williams’s allegations involve West Oaks’s breaches
of duty to him regarding his safety.  Specifically, Williams claims that West
Oaks did not train, warn, or supervise him regarding working with violent
patients such as Vidaurre, did not provide proper safety protocols or equipment
to use in an altercation with a violent patient, and generally failed to
provide a safe workplace.  No Texas case appears to have addressed whether the
claims of a health care provider’s employee in these circumstances constitute
health care liability claims.

Though chapter 74 provides that health care liability
claims include breaches of safety standards, safety claims must be directly
related to and inseparable from health care.  See Tex. Civ. Prac. & Rem. Code Ann. §
74.001(a)(13) (providing that health care liability claims include causes of
action for departures from accepted standards of “safety . . . directly related
to health care”); Marks, 2009 WL 2667801, at *4 (“[A]n accepted standard
of safety is implicated under the Act when the unsafe condition or thing is an
inseparable or integral part of the patient’s care or treatment.”).  The safety
prong is not so broad as to apply to any injury that occurs in a medical
setting.  See Marks, 2009 WL 2667801, at *4.  Williams does not claim
that West Oaks used improper medical judgment and breached a standard of medical
care toward a patient that caused him injury.[1] 
Rather, he alleges that West Oaks breached a duty owed to him by his employer
to provide a safe workplace.  Such claims are common in the employment context
and flow from the employment relationship, not from any medical relationship
giving rise to a medical standard of care.  See Kroger Co. v. Elwood,
197 S.W.3d 793, 794 (Tex. 2006) (discussing employer’s duty to use ordinary
care to provide a safe workplace, including warning of hazards and providing
appropriate safety equipment); LMC Complete Auto., Inc. v. Burke, 229
S.W.3d 469, 476 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) (stating that
employer’s duty of reasonable care to provide safe workplace includes warning,
safety equipment, training, and supervision).  West Oaks’s medical judgment is not
at issue in determining whether West Oaks breached its duty to provide a safe
workplace for its employee, Williams.

West Oaks argues that Williams’s claims are
inseparable from health care because Vidaurre’s claims, which everyone agrees
for purposes of this appeal are health care liability claims, arose from the
same facts and indeed mirror Williams’s claims.  Williams’s and Vidaurre’s
claims are related, but that is not the same as being inseparable.  The source
of the duty giving rise to the two sets of claims is distinct, as is the nature
of the duty.  See Diversicare, 185 S.W.3d at 850–51 (distinguishing
between hospital’s duty to patients and its duty to invitees); Allen v.
Connolly, 158 S.W.3d 61, 65 (Tex. App.—Houston [14th Dist.] 2005, no pet.)
(stating that employees are invitees of employer to whom employer owes duty to
use reasonable care to provide a safe workplace); see also Marks,
2009 WL 2667801, at *8; Diversicare, 185 S.W.3d at 851.  Therefore, West
Oaks could theoretically prevail against Vidaurre because it did not breach a
duty to him and yet still be liable to Williams for failing to provide a safe
workplace.  This demonstrates how the claims are indeed separable.

West Oaks further asserts that Williams’s claims are
health care liability claims because expert testimony is necessary to establish
whether its safety protocols and procedures were proper.  Expert testimony
might be required, but not necessarily medical expert testimony.  See
Diversicare, 185 S.W.3d at 848 (“The necessity of expert testimony from a medical
or health care professional to prove a cause of action may also be an
important factor in determining whether a cause of action is an inseparable
part of the rendition of medical or health care services.” (emphasis added)). 
Williams’s allegations involve security and safety issues that can arise in
other settings, such as jails and prisons, and may not require a medical
expert.  Furthermore, even if medical expert testimony is necessary to
establish Williams’s claims, the need for expert testimony is not dispositive
as to whether a claim is a health care liability claim.  See id. (noting
that the need for expert testimony “may” be an important factor); NCED
Mental Health, Inc. v. Kidd, 214 S.W.3d 28, 33 (Tex. App.—El Paso 2006, no
pet.) (stating that the need for medical expert testimony is not dispositive in
determining whether a claim is subject to chapter 74); see also Nat’l
Convenience Stores Inc. v. Matherne, 987 S.W.2d 145, 149 (Tex. App.—Houston
[14th Dist.] 1999, no pet.) (explaining that expert testimony cannot create a
duty where one does not exist).

Finally, we note that our conclusion is consistent
with the legislative purpose of the expert report requirement.  The legislature
enacted the expert report requirement for health care liability claims as part
of a larger scheme to address the crisis in the availability of medical
malpractice insurance.  See Marks, 2009 WL 2667801, at *2, 3; Diversicare,
185 S.W.3d at 846–47.  There is no indication that health care providers are facing
similar difficulty in obtaining insurance to cover negligence claims by their employees. 
Cf. Marks, 2009 WL 2667801, at *4 (discussing the legislative intent to
address the medical malpractice insurance crisis and noting that “neither the
statute nor the historical background suggests that physicians or health care
providers were similarly challenged when obtaining commercial general liability
insurance coverage for ordinary, non-medical accidents on their premises”). 
Expanding chapter 74’s requirements to other areas of tort law is properly left
to the legislature.  See Omaha Healthcare Ctr., L.L.C. v. Johnson, 246
S.W.3d 278, 284 (Tex. App.—Texarkana 2008, pet. filed).

Williams does not allege that West Oaks breached a
duty to any patient but rather breached an independent duty owed to him as an
employee.  This case involves a workplace injury, not medical malpractice, and
the fact that the injury occurred in a hospital does not change that.  See
Marks, 2009 WL 2667801, at *8 (“[I]t is not the identities of the parties
or the place of injury that defines the claim.”).  The trial court did not err
in denying West Oaks’s motion to dismiss Williams’s claims for failing to file
an expert report under chapter 74.  We affirm the trial court’s order.

 








                                                                                    

                                                                        /s/        Leslie
B. Yates

                                                                                    Justice

 

 

 

Panel consists of Chief Justice Hedges
and Justices Yates and Boyce.

 









[1]
West Oaks relies heavily on Wilson N. Jones Memorial Hospital v. Ammons,
266 S.W.3d 51 (Tex. App.—Dallas 2008, pet. filed), in which claims of a
patient’s wife, who was injured by another patient who was violent, were
determined to be health care liability claims.  Wilson is inapplicable
here because it did not involve an employment situation and because, unlike
here, the plaintiff’s injuries were allegedly caused by the failure of
treatment to a patient.  See id. at 64.