

# In The
# Court of Appeals
## Seventh District of Texas at Amarillo

No. 07-22-00020-CV

NORTHWEST TEXAS HEALTHCARE SYSTEM A/K/A NORTHWEST TEXAS HOSPITAL AND UNIVERSAL HEALTH SERVICES, INC., APPELLANTS

V.

JANET MARIE ERWIN, APPELLEE

On Appeal from the 320th District Court
Potter County, Texas
Trial Court No. 110,200-D-CV, Honorable Pamela C. Sirmon, Presiding

July 25, 2022

MEMORANDUM OPINION

Before QUINN, C.J., and PARKER and DOSS, JJ.

Northwest Texas Healthcare System a/k/a Northwest Texas Hospital and Universal Health Services, Inc.[1] ("NWTHS" or Hospital) appeals from an order denying its motion to dismiss under the Texas Medical Liability Act ("TMLA"). Janet Marie Erwin, a patient in the Hospital's emergency room, filed suit against NWTHS after she was

---

[1] According to NWTHS's *Motion to Dismiss*, Appellee, Janet Marie Erwin, agreed not to pursue her claims against Universal Health Services, Inc.

assaulted by another patient. Contending her claims were health care liability claims under chapter 74 of the Texas Civil Practice and Remedies Code, NWTHS filed a motion to dismiss because she failed to serve an expert report as required by statute. The trial court denied NWTHS's motion. The Hospital appealed, urging the same contention. We reverse.

### *Background*

On the morning of February 14, 2019, Erwin arrived by ambulance at the emergency room at NWTHS for treatment after she experienced trouble breathing. Hospital staff admitted her into a room and conducted their initial triage of her. While she awaited assignment to a less temporary hospital room, another patient, Thaddaeus McLaughlin, entered Erwin's room. Ostensibly under the influence of methamphetamine, he acted like he had a knife, grabbed Erwin around the neck, choked her, and yelled, "I have a hostage" and "I'm going to cut her throat." A third patient then entered the room and "body slam[med]" McLaughlin to the ground. Police responded and removed McLaughlin. Nurses then "scrambled" to get Erwin out of the room and place her elsewhere.

Erwin filed criminal charges against McLaughlin. She also filed suit against NWTHS, alleging negligence. She asserted that McLaughlin appeared to have been under the influence of methamphetamine the day he confronted her and that this was known or should have been known by the hospital staff. Consequently, the Hospital both had and breached a duty to provide a safe room for her while receiving medical care and treatment. NWTHS joined issue and unsuccessfully moved to dismiss, as mentioned earlier.

***Authority***

The central inquiry is whether Erwin's claim is a health care liability claim under chapter 74 of the Texas Civil Practice and Remedies Code. Because this case requires us to interpret the statute to determine whether Erwin asserts such a claim, our review is de novo. *Loaisiga v. Cerda,* 379 S.W.3d 248, 254–55 (Tex. 2012).

Next, section 74.351 of the TMLA requires a plaintiff, in cases involving a health care liability claim, to serve the defendant with one or more expert reports, on or before the 120th day after the defendant's original answer is filed. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a). If the plaintiff fails to do so, statute mandates that the cause be dismissed with prejudice. *Id.* § 74.351(b)(2). The requirement applies only to a health care liability claim, and the latter consists of "a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract." *Id.* § 74.001(a)(13). From this definition, the Supreme Court distilled three components for such a claim. They are that: (1) a physician or health care provider be a defendant; (2) the claim concerns treatment, lack of treatment, or a departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care; and (3) the defendant's act or omission proximately caused the injury to the claimant. *Psychiatric Sols., Inc. v. Palit*, 414 S.W.3d 724, 725–26 (Tex. 2013) (quoting *Tex. W. Oaks Hosp., LP v. Williams,* 371 S.W.3d 171 (Tex. 2012)). Only the second is at issue here.

3

Erwin characterizes her claim as one for "premises liability." That is, she likens it to a landowner neglecting to provide adequate security against a third party's criminal conduct per *Timberwalk Apartments, Partners, Inc. v. Cain*, 972 S.W.2d 749 (Tex. 1998). Though criminal conduct may be involved here, her characterization of the action is inaccurate. Analysis reveals it to be a health care liability claim.

We start with her pleadings. In them, she averred that: (1) McLaughlin either was on methamphetamine, coming off the drug, or experiencing withdrawal symptoms; (2) hospital staff knew or should have known this; (3) McLaughlin assaulted and battered Erwin after undergoing observation in the ER and while awaiting another room assignment; (4) the Hospital and its staff "should have provided a safe room for [Erwin] and her daughter"; and (5) "Mr. McLaughlin was under the care and control of the hospital and staff." If nothing else, these accusations implicate the Hospital's compliance with safety standards *viz-a-viz* patients over whom the Hospital assumed the provision of medical attention. Furthermore, a claim based on a departure from such standards constitutes a health care liability claim when a "substantive nexus" exists between those standards and the provision of health care. *Ross v. St. Luke's Episcopal Hosp.*, 462 S.W.3d 496, 499 (Tex. 2015).[2] That Erwin had appeared at the hospital for medical attention, had been admitted by the hospital for medical treatment (i.e., was an actual patient), was inside an ER room awaiting other accommodations when the alleged assault

---

[2] Factors to consider when assessing the existence of the requisite nexus include whether (1) the alleged negligence occurred in the course of the defendant's performing tasks with the purpose of protecting patients from harm; (2) the injuries occurred in a place where patients might be during the time they were receiving care, so that the obligation of the provider to protect persons who require special, medical care was implicated; (3) the claimant was in the process of seeking or receiving health care when the injury occurred; (4) the claim is based on safety standards arising from professional duties owed by the health care provider; and (5) the alleged negligence occurred while the defendant was taking action or failing to take action necessary to comply with safety-related requirements set for health care providers by governmental or accrediting agencies. *Ross*, 462 S.W.3d at 505.

4

transpired, and was assaulted by another patient apparently there to receive medical treatment establish the requisite nexus between the safety protocols and provision of health care.

Indeed, the circumstances at bar differ in no meaningful respect from those in *Diversicare Gen. Partner, Inc. v. Rubio,* 185 S.W.3d 842 (Tex. 2005). There, a patient in a nursing home sexually assaulted another patient. *Id.* at 845. The Texas Supreme Court viewed the victim's ensuing suit and causes of action as departures from accepted standards of professional health care and safety. *Id.* It reasoned that the supervision of the victim and assailant were inseparable from the health care and nursing services provided to the victim. *Id.* at 849. Given that, the claims fell within the scope of the TMLA. *Id.* at 845. As the court observed, "[h]ealth care staff make judgments about the care, treatment, and protection of individual patients and the patient populations in their facilities based on the mental and physical care the patients require." *Id.* at 850. "The health care standard applies the ordinary care of trained and experienced medical professionals to the treatment of patients entrusted to them." *Id.*

Emergencies come in many guises. Those appearing in a hospital's emergency room at any particular time may suffer from a myriad of differing ailments. And, those ailments may be physical or mental. Moreover, one does not engage in speculation by recognizing that this mix of patients may appear at an emergency room's threshold at the same time. It is "an emergency room" after all, and emergencies do not take numbers to await occurrence and attention. Thus, reason compels that professional staff present at the facility must exercise their independent medical judgment and training when

5

determining how and when to treat the differing patients within its confines. Again, the Supreme Court acknowledged as much in *Diversicare*.

Here, Erwin entrusted herself to the medical care and protection of the Hospital and its staff, just as did the victim in *Diversicare*. She had submitted herself to their judgments about care, treatment, and protection in relationship to other patients and the mental and physical care required by her and other patients. As in *Diversicare*, the Hospital's supervision of her and her assailant were inseparable from the purpose underlying their presence in the hospital, that purpose being the provision of health care services. So, what was said and the conclusion reached in *Diversicare* control here.

Nor can we ignore the similarity between the circumstances here and those in *Wilson N. Jones Mem'l Hosp. v. Ammons,* 266 S.W.3d 51 (Tex. App.—Dallas 2008, pet. denied). Like Erwin, Ammons appeared in the emergency room for medical treatment and suffered an attack by a mentally troubled patient. *Id.* at 53–54. The court observed that "the decision as to how and where to hold [the psychiatric patient] until he could be transferred for further treatment was a 'health care' decision." *Id.* at 64. "Because the critical acts alleged by Ammons focus on alleged failures with respect to that health care decision, proving any of Ammons's claims would require establishment of the standards of care regarding the supervision and restraint of psychiatric patients." *Id.* And, establishing those standards would require expert testimony. *Id.* These circumstances led the court to conclude that "Ammons's negligence claims [were] 'so inextricably interwoven with the rendition of health care services' that such claims constitute health care liability claims." *Id.* The same can be said of Erwin's assailant. While awaiting treatment in an emergency room, he experienced a psychotic episode caused by

6

methamphetamine or drug withdrawal, or so she suggests. How a medical facility and its personnel deal with such a patient would reasonably implicate standards of care regarding the supervision and restraint of them. Establishing those standards and illustrating compliance or noncompliance would also entail the proffer of expert testimony. This means that Erwin's claim of negligence, like Ammons's, also is inextricably interwoven with the rendition of health care services. So, *Ammons* too supports our conclusion that Erwin's complaint fell under the umbrella of a health care liability claim.

As for Erwin's reference to *Belmont Vill. Hunters Creek TRS, LLC v. Marshall*, 634 S.W.3d 115 (Tex. App.—Houston [1st Dist.] 2020, pet. denied), we find that case readily distinguishable. It involved the rape by an employee of a resident in an assisted living facility. *Id.* at 119. Yet, the facility contracted to forgo the provision of health care services to the resident. *Id.* at 126–27. Simply put, the facility provided the victim a place to live, not a place to receive medical or health care treatment. Here, though, Erwin suffered her assault while at a hospital to receive medical attention and after it admitted her for such treatment. A liberal reading of her complaint also indicates that her attacker was present at the facility to receive medical treatment for a condition triggering a mental episode and resulting in the attack. So, unlike the situation in *Belmont*, medical treatment underlies the reason for Erwin and her attacker encountering each other.

In short, the dispute between the parties concerns the appropriate standard of care owed to a patient, the services and supervision necessary to satisfy the standard, and the standard's breach. The Hospital's training and staffing policies coupled with protocols implicating the supervision and protection of its patients from other patients serve as integral components of the health care services Erwin sought. Thus, we conclude that

7

Erwin's cause of action fell under the umbrella of a health care liability claim. Accordingly, she was required to comply with the expert report requirements in section 74.351(a) and was subject to the dismissal requirement in section 74.351(b).

The trial court erred in denying the statutory mandate to dismiss. We sustain NWTHS's issue, reverse the trial court's order and render judgment that Erwin take nothing from the Hospital and staff she sued. We also remand the cause for further proceedings regarding the award of costs and attorney's fees. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(b)(1) (stating that if "an expert report has not been served within the period specified by Subsection (a), the court, on the motion of the affected . . . health care provider, shall, subject to Subsection (c), enter an order that . . . awards to the affected . . . health care provider reasonable attorney's fees and costs of court").

Brian Quinn
Chief Justice