**Affirmed and Opinion filed November 3, 2011.**



In The

# Fourteenth Court of Appeals
_____

NO. 14-10-01126-CV
NO. 14-10-01147-CV
NO. 14-10-01148-CV
_____

**IHSAN SHANTI, M.D., LARRY LIKOVER, M.D., REHAB ALLIANCE OF TEXAS, INC., D/B/A STEEPLECHASE FAMILY HEALTHCARE AND STEEPLECHASE PAIN MANAGEMENT & SURGICAL ASSOCIATES, SHEILA SMITH, F/N/A SHEILA GOYER, DENNIS SMITH, D.C., AND KARL COVINGTON, M.D., Appellants**

**V.**

**ALLSTATE INSURANCE COMPANY, ALLSTATE INDEMNITY COMPANY, ALLSTATE PROPERTY & CASUALTY INSURANCE COMPANY, ALLSTATE COUNTY MUTUAL INSURANCE COMPANY, AND ALLSTATE FIRE & CASUALTY INSURANCE COMPANY, Appellees**

---

**On Appeal from the 11th Judicial District Court**
**Harris County, Texas**
**Trial Court Cause No. 2009-81354**

---

## OPINION

In this accelerated interlocutory appeal, appellants challenge the trial court's denial of their motion to dismiss under section 74.351 of the Texas Medical Liability Act ("TMLA"). *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(b) (West 2011); *see also id.* § 51.014(a)(9) (permitting interlocutory appeals from a trial court's ruling under Section 74.351). Finding no error, we affirm.

## BACKGROUND

This case arises from a suit between a group of insurance companies on one side, and a group of health care providers and physicians on the other. In their live pleading, appellees Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Insurance Company, Allstate County Mutual Insurance Company, and Allstate Fire & Casualty Insurance Company (collectively "Allstate") asserted a cause of action for fraud, conspiracy, and unjust enrichment against appellants Rehab Alliance of Texas, Inc., d/b/a Steeplechase Family Healthcare and Steeplechase Pain Management & Surgical Associates; Sheila Smith, f/n/a Sheila Goyer; Dennis Smith, D.C.; Karl Covington, M.D.; Ihsan Shanti, M.D.; and Larry Likover, M.D. Sheila Smith is the owner and president of Rehab Alliance, a clinic specializing in the treatment of persons injured in automobile collisions. Sheila's husband, Dennis, serves as a chiropractor in one of Rehab Alliance's two Houston-area locations. Doctors Covington, Shanti, and Likover are all alleged to have had some external relationship with Rehab Alliance.

As a provider of automobile insurance, Allstate paid a number of settlement claims to persons who were purportedly involved in car accidents and later treated by appellants. Allstate alleges that it was damaged because these settlement sums were paid in reliance on false material representations reflected in documents, bills, and other records prepared by appellants. Allstate also alleges that appellants willfully conspired together, through referrals and other fee-splitting schemes, to defraud the insurance companies and to obtain funds to which they were not justly entitled.

2

Allstate alleges an elaborate set of facts in support of its three legal theories. Briefly summarized, those facts suggest that: (1) appellants solicited referrals from personal injury attorneys, offering to provide their clients with all of the medical services and documentation needed to support a personal injury claim; (2) in exchange for those services, appellants demanded a portion of any settlement or judgment obtained in their patients' litigation; (3) in an effort to maximize their financial gain, appellants conspired together and charged their patients for expensive and unnecessary medical procedures; and (4) through falsified records and other materials, appellants misrepresented to various insurance companies, including Allstate, that all of the services they performed were executed in honest and independent clinical judgment. The more precise details of Allstate's allegations are described in the following paragraphs.

When they first arrive at Rehab Alliance, patients are required to sign an assignment of benefits acknowledging their personal liability for the clinic's bills. This document is forwarded to the patient's attorney, who either includes it in demand packages or submits it directly to Allstate. Patients are also given a letter of protection, in which Rehab Alliance agrees to release the patient of all financial obligations incurred during treatment. The release comes with two conditions: (1) the patient must maintain his or her attorney representation, and (2) the patient must complete the treatment plan provided by Rehab Alliance. These letters of protection are never disclosed to insurers such as Allstate.

Dennis Smith is the sole chiropractor for Rehab Alliance, and Dr. Covington is its Medical Director. Despite the title, Dr. Covington maintains his own practice at a separate location, and he is rarely seen on the premises of either Rehab Alliance clinic. Pursuant to an oral agreement, Rehab Alliance pays Dr. Covington a flat quarterly fee for public use of his name.

Although Dr. Covington hardly ever visits Rehab Alliance, his name appears on many medical records signifying that he examined and provided services to clinic patients. These examinations are actually provided by nurse practitioners employed by Rehab

3

Alliance on a contract basis. Dr. Covington neither supervises the nurse practitioners, nor provides them with any written protocols or instructions. The nurse practitioners prescribe and refill medications, including narcotics such as Vicodin, under Dr. Covington's auspices.

Following examinations, patients are often treated in uniform, "cookie cutter" fashion. They receive hot and cold packs and electric stimulation modalities. Rehab Alliance bills these modalities under a code for "attended" procedures, even though they are not attended. At the request of their attorneys, patients are also referred for MRI scans at a facility managed by U.S. Imaging, Inc. Radiologists at this facility falsely identify vertebral disc bulges and herniations and report these findings in medical narratives. Rehab Alliance has an agreement with U.S. Imaging, in which Sheila Smith has the authority to reduce or compromise the fees billed.

After the MRIs, patients are also referred for orthopedic and pain management consultations. Over the years, a number of physicians have conducted these consults, including Doctors Shanti and Likover. These doctors conduct cursory consultations, even though billing records show the patients are charged for "comprehensive examinations," which typically involve sixty minutes of face-to-face time with the patient. Pursuant to agreements between Rehab Alliance and these physicians, billing for the consultations is managed exclusively by Rehab Alliance. As with the MRI procedures, Sheila Smith has the authority to reduce or compromise the physician's fees, collect the fees, and split the recovery with the treating physician. Because recovery depends upon the patient's successful collection of settlement or judgment, the doctors effectively work on a contingency basis.[1]

---

[1] According to Allstate, Rehab Alliance also has a written contract with Dr. Shanti. Under the terms of this contract, if the consultation results in additional procedures with the patient, Dr. Shanti is supposed to receive twenty-five percent of the amount collected, with a minimum of $650, in the event the patient recovers by way of settlement or judgment.

Patients may also be referred for epidural steroid injections ("ESIs"). These procedures are costly and often performed at the behest of the patient's attorney. Billing for ESIs is managed by Steeplechase Pain Management & Surgical Associates, which is merely an assumed name of Rehab Alliance. The ESIs are performed in the same facility managed by U.S. Imaging where the MRIs are conducted. Dr. Shanti performs some of the procedures here himself.[2] As with the MRIs, Sheila Smith has the authority to set the charge and reduce or compromise the billing. The billing represents all charges associated with the ESI, including the administering physician's fee.[3] When Rehab Alliance collects the fee, it is split evenly with U.S. Imaging.

In addition to the letters of protection, appellants also conceal other documents, such as "patient update" notes. These notes reflect that medications are being prescribed by lay persons using Dr. Covington's name, that attorneys are making determinations as to whether MRIs and ESIs should be performed, and that attorneys are also requesting revisions in certain medical narrative reports. These documents are neither disclosed in the claims process, nor produced in response to subpoenas for clinic records.

Based on these factual allegations, Allstate seeks recovery of damages resulting from a number of misrepresentations, including: (1) that certain services charged by Rehab Alliance were provided by a medical doctor, or at least a properly supervised nurse practitioner; (2) that patients remained liable for their own medical bills; and (3) that certain referrals and procedures charged to the patients were medically necessary and a product of independent clinical judgment. Allstate also alleges that appellants specifically failed to disclose: (1) that doctors performing consultations and other procedures were effectively paid on a contingency basis; (2) that personal injury attorneys dictated whether

---

[2] Under his contract, if Dr. Shanti performs the procedure at a separate facility, Dr. Shanti is obligated to pay Rehab Alliance a kickback.

[3] Allstate also alleges that the administering physician may receive an "up front" payment in the amount of $1500, from either the patient or the patient's attorney. These initial payments are not reflected in documentation submitted to Allstate. All additional payments are contingent upon the receipt of settlement.

certain procedures would be performed; (3) that partial payments were made for some surgical procedures; (4) that medications were prescribed and refilled by nurse practitioners, rather than licensed physicians; and (5) that appellants were interested parties in their patients' litigation. Allstate contends that appellants knew their representations to be false, that they conspired together to create these false and misleading statements, and that they ultimately caused Allstate to act upon these misrepresentations by paying sums in settlement.

The focus of this appeal is whether the suit below qualifies as a "health care liability claim," which would require Allstate to serve appellants with a timely filed medical expert report under Section 74.351 of the TMLA. Of the opinion that this suit did not constitute a health care liability claim, Allstate made no attempt to produce the expert report. Based on their belief that the suit against them was a health care liability claim, appellants moved for mandatory dismissal under Section 74.351(b). The trial court denied the motion, and this appeal followed.

## ANALYSIS

We normally apply an abuse of discretion standard when considering a trial court's ruling on a motion to dismiss. *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002); *Appell v. Muguerza*, 329 S.W.3d 104, 109 (Tex. App.—Houston [14th Dist.] 2010, pet. filed). When the issue involves Section 74.351 and a determination of whether the TMLA applies, however, we must engage in statutory interpretation, which involves a question of law we consider de novo. *Buck v. Blum*, 130 S.W.3d 285, 290 (Tex. App.—Houston [14th Dist.] 2004, no pet.).

When interpreting a statute, our primary goal is to ascertain and give effect to the intent of the legislature. *F.F.P. Operating Partners, L.P. v. Duenez*, 237 S.W.3d 680, 683 (Tex. 2007). Where the statutory text is clear, we presume that the words chosen are the surest guide to legislative intent. *Presidio Indep. Sch. Dist. v. Scott*, 309 S.W.3d 927, 930 (Tex. 2010). We rely upon the definitions prescribed by the legislature and any technical or

particular meaning the words have acquired. Tex. Gov't Code Ann. § 311.011(b) (West 2005). Otherwise, we apply the words' plain and common meaning, unless the legislature's contrary intention is apparent from the context or such a construction would lead to absurd results. *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625–26 (Tex. 2008).

The duty to serve an expert report applies only to those plaintiffs seeking recovery in a "health care liability claim." Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a). The legislature has defined that term as follows:

> "Health care liability claim" means a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.

*Id.* § 74.001(a)(13). As suggested by the Texas Supreme Court, this definition consists of three component parts: (1) a physician or health care provider must be named as the defendant; (2) the cause of action must refer to a patient's treatment, lack of treatment, or some other departure from accepted and specialized standards of care; and (3) the defendant's act, omission, or other departure must proximately cause injury or death to the claimant. *Marks v. St. Luke's Episcopal Hosp.*, 319 S.W.3d 658, 662 (Tex. 2010) (plurality opinion). The parties do not dispute that appellants qualify individually as either physicians or health care providers. Our discussion will accordingly focus on the two remaining components.

Under the second component, we examine the allegations that form the "cause of action," a term not expressly defined under the TMLA. The supreme court has observed that a "cause of action" may be regarded "as a fact or facts entitling one to institute and maintain an action, which must be alleged and proved in order to obtain relief," or a "group of operative facts giving rise to one or more bases for suing." *In re Jorden*, 249 S.W.3d 416, 421 (Tex. 2008) (orig. proceeding) (quoting *A.H. Belo Corp. v. Blanton*, 129 S.W.2d

619, 621 (Tex. 1939) and Black's Law Dictionary 235 (8th ed. 2004)). Consistent with this understanding, when determining whether a cause of action constitutes a health care liability claim, we look to the facts upon which relief is sought, rather than the manner in which the cause of action is pleaded. *See Yamada v. Friend*, 335 S.W.3d 192, 196–97 (Tex. 2010); *Garland Cmty. Hosp. v. Rose*, 156 S.W.3d 541, 543–44 (Tex. 2004). Plaintiffs may not avoid the requirements of the TMLA by splitting and splicing a claim into multiple causes of action if the underlying facts would also give rise to a health care liability claim. *Yamada*, 335 S.W.3d at 197. If the facts complain of an act or omission that is "an inseparable part of the rendition of medical services," then the cause of action is a health care liability claim. *Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 848 (Tex. 2005).

In deciding whether an act or omission is inseparable from the rendition of medical services, we may consider such factors as (1) whether a specialized standard in the health care community applies to the circumstances in question; (2) whether the alleged facts or omissions involve medical judgment related to the patient's care or treatment; and (3) whether medical expert testimony would be needed to prove the cause of action. *Id.* at 847–52; *Cardwell v. McDonald*, — S.W.3d —, No. 03-10-00086-CV, 2011 WL 3890397, at *6 (Tex. App.—Austin Aug. 31, 2011, no pet. h.); *Tex. W. Oaks Hosp., LP v. Williams*, 322 S.W.3d 349, 352 (Tex. App.—Houston [14th Dist.] 2010, pet. granted).

In its live pleading, Allstate complains of specific factual circumstances regarding appellants' manner of billing, their relationship among each other, and their connection with unnamed personal injury attorneys. Allstate claims that Rehab Alliance failed to disclose that patients were required to sign letters of protection releasing them from financial responsibility incurred during their course of treatment. Once these letters of protection were collected, Allstate alleges that Rehab Alliance proceeded to charge the patient with various services, some of which were never performed as billed, and others that were performed upon the direction of an attorney, rather than a licensed medical

8

professional. The allegations also state that Rehab Alliance maintained illicit relationships with the other named appellants pursuant to a conspiratorial "kickback" scheme. Under this scheme, appellants inflated the charges of their patients' medical histories, concealed their interest in their patients' litigation, and depended upon their patients' successful receipt of settlement for the collection of their own fees. Allstate argues that these are claims sounding in fraud, and that they are not health care liability claims.

Appellants argue that Allstate's claims are health care liability claims, improperly recast as a suit for fraud, conspiracy, and unjust enrichment. Appellants specifically rely on Allstate's allegations that they falsely represented certain aspects of their medical treatment, including: (1) "That referrals for MRIs were medically necessary"; (2) "That MRIs showed the patient had incurred spinal injury, such as disc herniations, due to the accidents at issue"; (3) "That referrals for medical consultations, including orthopedic and pain management consultations, were medically necessary"; (4) "That the medical consultation examinations conducted were comprehensive examinations"; (5) "That surgical injection procedures were medically necessary, due to alleged herniations; and (6) "that referrals and prescriptions for medication were reasonable and necessary and made [by] physicians exercising independent clinical judgment." Appellants insist that these allegations demonstrate health care liability claims because they involve deviations from the appropriate standard of care. Therefore, they insist that the testimony of medical experts is required.

In *Pallares v. Magic Valley Electric Cooperative, Inc.*, the Thirteenth Court of Appeals held that a plaintiff did not assert a health care liability claim when it sought damages resulting from a physician's fraudulent billing and unnecessary course of treatment. *Pallares v. Magic Valley Elec. Coop., Inc.*, 267 S.W.3d 67 (Tex. App.—Corpus Christi 2008, pet. denied). The plaintiff in that case was the employer of a patient participating under the employer's self-insured health plan. *Id.* at 69. After the patient sought medical treatment, her physician submitted a bill to the employer for more than a

half million dollars. *Id.* The employer never maintained that the physician was negligent in his diagnosis and treatment. Instead, in a suit for fraud, the employer alleged that the physician knowingly misrepresented the extent of the patient's condition, with the intent of inducing payment for expensive and inappropriate procedures. *Id.* at 69, 72. In deciding that the cause of action did not constitute a health care liability claim, the court of appeals recognized that the employer's damages were "merely tangential" to the medical services provided by the physician. *Id.* at 72. Relying on the text of the TMLA, the court held that it could not "expand health care liability to peripheral claims *not directly related to health care.*" *Id.* at 73 (citing Tex. Civ. Prac. & Rem. Code Ann. § 74.001(a)(13)) (emphasis added).

Consistent with *Pallares*, we find that Allstate's cause of action does not rely on factual allegations directly relating to an act, omission, or other claimed departure from the specialized and professional duty of care required of appellants. In other words, the allegations only refer to facts "tangential" to the rendition of medical services.

In deciding whether the case presents a health care liability claim, we are not bound by either party's characterization of the claims. *Hector v. Christus Health Gulf Coast*, 175 S.W.3d 832, 835 (Tex. App.—Houston [14th Dist.] 2005, pet. denied). The supreme court has consistently stated that the characterization of the claim must turn upon its "underlying nature" or "essence" or "gravamen." *Omaha Healthcare Ctr., LLC v. Johnson*, 344 S.W.3d 392, 394 (Tex. 2011); *Yamada*, 335 S.W.3d at 196–97; *Marks*, 319 S.W.3d at 664; *Diversicare*, 185 S.W.3d at 854; *Rose*, 156 S.W.3d at 543. After examining the factual allegations that form the basis of Allstate's complaint, we are convinced that the essence of Allstate's claim is not one of health care liability. From what we can discern, Allstate has not alleged, or artfully pleaded around, any failure to meet the standard of care. Allstate does not allege, for instance, that appellants were negligent in their diagnoses, or that Allstate (or the patients it insured) suffered injury or death as a result of their negligence.

To the contrary, Allstate merely alleges that it was damaged by false material representations perpetrated by appellants. Though some of these misrepresentations concern the medical necessity of certain referrals or procedures, the underlying nature of Allstate's claim is a complicated, multi-level scheme to defraud the insurance companies. That scheme begins with appellants' concealing the aspect of their billing that releases patients from financial responsibility. It proceeds to a concerted effort between appellants and personal injury attorneys to have appellants perform certain procedures upon the attorneys' request, rather than through appellants' own clinical judgment. Finally, it concludes with appellants' charging their patients for these unnecessary procedures, with the full expectation that Allstate would rely upon their medical records when deciding on a settlement. This scheme does not involve any deviation from a medical standard of care. Medical expert testimony would not be required to establish that appellants were willing participants in a conspiracy to commit fraud, or that they were engaging in a particular course of business as a means of extorting larger fees from insurers such as Allstate. Even though Allstate's petition involves some allegations of medical necessity, the essence of the cause of action does not implicate an inseparable part of the rendition of medical services. *See Pallares*, 267 S.W.3d at 72; *Shannon v. Law-Yone*, 950 S.W.2d 429, 434, 437–38 (Tex. App.—Fort Worth 1997, pet. denied) (holding cause of action was not a health care liability claim where plaintiff alleged that physicians "created false records as a basis for lengthening patients' stays to increase census and revenue").

Turning to the third component of a health care liability claim, we also determine that Allstate has not alleged that appellants' act, omission, or claimed departure proximately caused the injury or death of a "claimant." The TMLA defines a "claimant" as "a person, including a decedent's estate, seeking or who has sought recovery of damages in a health care liability claim. All persons claiming to have sustained damages as the result of the bodily injury or death of a single person are considered a single claimant." Tex. Civ. Prac. & Rem. Code Ann. § 74.001(a)(2). Allstate does not fit neatly into this definition. No part of its cause of action is derivative from an injury or death of another person. Allstate is

not a subrogation claimant, seeking relief on behalf of appellants' patients. In fact, none of its damages relates to a physical injury sustained.[4] Because we determine that Allstate has not asserted a health care liability claim, we hold that Allstate cannot be a "claimant" under the TMLA.

Although we conclude that Allstate has not alleged a health care liability claim, we address appellants' remaining arguments to the contrary. These arguments were raised in separate appellate cause numbers, and are not shared among all appellants together. We examine these arguments as they have been raised, according to appellants' individual briefing.

### Additional Arguments by Dr. Shanti

In one of his separately raised arguments, Dr. Shanti contends that Allstate qualifies as a "claimant," despite Allstate's observance that it never received treatment as a patient. For authority, Dr. Shanti relies on *Marine Transport Corp. v. Methodist Hospital*, 221 S.W.3d 138 (Tex. App.—Houston [1st Dist.] 2006, no pet.), and *Smith v. Financial Insurance Co. of America*, 229 S.W.3d 405 (Tex. App.—Eastland 2007, no pet.), two cases holding that non-patients may qualify as claimants. These cases are distinguishable because the plaintiffs in each expressly alleged departures from the appropriate standard of care. *See Marine Transport*, 221 S.W.3d at 150; *Smith*, 229 S.W.3d at 406. The petition in this case involves no similar allegation.

In another argument, Dr. Shanti attempts to distinguish *Pallares*. He observes that in *Pallares*, "the defendants were the ones directly billing" the self-insured employer, whereas in the present case, Rehab Alliance managed the billing and he "only provided treatment." Dr. Shanti reads *Pallares* too narrowly. The cause of action involved more than

---

[4] We do not suggest that the TMLA cannot apply to claims involving non-physical injuries. *See, e.g.*, *Murphy v. Russell*, 167 S.W.3d 835, 837(Tex. 2005) (per curiam) (holding claim that anesthesiologist sedated patient against her instruction was a health care liability claim); *see also TTHR, L.P. v. Coffman*, 338 S.W.3d 103, 111 (Tex. App.—Fort Worth 2011, no pet.) (discussing additional cases where non-physical injuries have resulted in health care liability claims).

mere fraudulent billing. As with this case, *Pallares* turned upon alleged misrepresentations regarding the necessity of certain procedures provided by the physician. *See Pallares*, 267 S.W.3d at 72. We accordingly reject his attempt to differentiate this case.

*Additional Arguments by Dr. Likover*

Proceeding pro se, Dr. Likover insists that Allstate has raised a health care liability claim because an allegation that a procedure was unnecessary "is clearly a claim of malpractice." We have already addressed this argument, and similar ones by the remaining appellants. The underlying nature of such allegations is not that appellants departed from an accepted standard of care; rather, it is that appellants represented their procedures to be clinically necessary when, in fact, they were being performed in "cookie cutter" fashion and at the behest of personal injury attorneys.

Dr. Likover also argues that Allstate has alleged an "injury" within the meaning of the TMLA. He observes that Allstate's cause of action involves allegations that unnecessary surgeries were performed, and in any surgery, a patient necessarily suffers "a controlled injury." Dr. Likover does not cite any authority for this argument. In fact, the only authority in his brief is a recitation of the standard of review. We have determined that this argument has been waived. *See* Tex. R. App. P. 38.1(i).

*Additional Arguments by Rehab Alliance, Sheila Smith, Dennis Smith, and Dr. Covington (the "Rehab Alliance appellants")*

In their brief, the Rehab Alliance appellants argue that Allstate's cause of action constitutes a health care liability claim because "misrepresentations regarding treatment fall under the TMLA." For this proposition, they rely on some eleven cases.[5] Discussion of

---

[5] The cases cited were *Binur v. Jacobo*, 135 S.W.3d 646 (Tex. 2004); *Victoria Gardens of Frisco v. Walrath*, 257 S.W.3d 284 (Tex. App.—Dallas 2008, pet. denied); *Vaughan v. Nielson*, 274 S.W.3d 732 (Tex. App.—San Antonio 2008, no pet.); *Strom v. Mem'l Hermann Hosp. Sys.*, 110 S.W.3d 216 (Tex. App.—Houston [1st Dist.] 2003, pet. denied); *De Leon v. Vela*, 70 S.W.3d 194 (Tex. App.—San Antonio 2001, pet. denied); *Savage v. Psychiatric Inst. of Bedford, Inc.*, 965 S.W.2d 745 (Tex. App.—Fort Worth 1998, pet. denied); *Winkle v. Tullos*, 917 S.W.2d 304 (Tex. App.—Houston [14th Dist.] 1995, writ denied); *Ranelle v. Beavers*, No. 02-08-437-CV, 2009 WL 1176445 (Tex. App.—Fort Worth Apr. 30, 2009, no pet.)

those cases is almost entirely cursory in the briefs. Many of the authorities do not involve claims of intentional misrepresentations, and others plainly allege medical malpractice claims for unnecessary procedures. The Rehab Alliance appellants have not demonstrated that the allegations of fraud in this case are analogous to any case in which a court has determined a cause of action to be a health care liability claim.

The Rehab Alliance appellants also attempt to distinguish *Pallares* on the basis that "*Pallares* involved fraudulent representations by a health care provider of symptoms, *not* whether certain treatment and prescriptions were medically necessary." The Rehab Alliance appellants misstate the facts of that case. The employer in *Pallares* did allege that certain procedures were medically unnecessary. In its live pleading before the court, the employer noted the following:

> Ms. Merett [the patient–employee] was diagnosed with chronic and severe pain and the defendant undertook a course of treat[ment] which has resulted in costs in the amount of $631,850.99, *which were unnecessary and inappropriate*. The employee received no significant relief, other th[a]n temporary, and has resulted in the charges which are in contention herein.

> 4.3 The defendants' [Pallares's] representation that Ms. Merett, Plaintiff's [Magic Valley's] employee and insured, had had chronic pain was false, and at the time the representation was made, the defendant Pallares knew it to be false. The defendant Pallares made the false representation with the intent of inducing the plaintiff to pay *for such unnecessary treatment*.

*Pallares*, 267 S.W.3d at 72 (emphasis added).

Additionally, the Rehab Alliance appellants contend that Allstate alleged a health care liability claim because Allstate designated two medical experts four months after the TMLA's deadline for serving an expert report. Courts have previously recognized that the necessity for medical expert testimony may indicate that a claim is a health care liability

---

(mem. op.); *Merritt v. Williamson*, No. 01-08-00293-CV, 2008 WL 2548128 (Tex. App.—Houston [1st Dist.] June 26, 2008, no pet.) (mem. op.); *Holleman v. Vadas*, No. 04-05-00875-CV, 2007 WL 1059035 (Tex. App.—San Antonio Apr. 11, 2007, pet. denied) (mem. op.); and *Erickson v. Cigarroa*, No. 04-04-00075-CV, 2005 WL 1397115 (Tex. App.—San Antonio June 15, 2005, no pet.) (mem. op.).

claim. *Diversicare*, 185 S.W.3d at 848; *Rose*, 156 S.W.3d at 544. However, "the need for expert testimony is not dispositive as to whether a claim is a health care liability claim." *Tex. W. Oaks Hosp.*, 322 S.W.3d at 353; *see also Pallares*, 267 S.W.3d at 74–75 (holding that cause of action was not a health care liability claim even if medical expert testimony might be needed). In this case, Allstate's medical experts were designated to opine on such matters as (1) the propriety of the relationships existing between physician and non-physician defendants; (2) whether a physician may be employed by, or split fees with, a chiropractor or chiropractic clinic; (3) whether the documentation regarding the consultation examinations justified their designations as "comprehensive examinations"; and (4) whether a chiropractor or chiropractic clinic employee may prescribe medication. This testimony speaks directly to Allstate's causes of action for fraud and conspiracy. There is no indication that the experts would have testified about a departure from the standard of care that proximately caused injury or death to a claimant.

## CONCLUSION

Courts must be careful not to expand the TMLA beyond its stated bounds. *Theroux v. Vick*, 163 S.W.3d 111, 113 (Tex. App.—San Antonio 2005, pet. denied). Not all claims amount to health care liability claims merely because they arise in a health care setting. *See Diversicare*, 185 S.W.3d at 854. As with *Pallares*, the facts alleged in this case do not state a cause of action for health care liability.

The trial court's denial of appellants' motion to dismiss is therefore affirmed.


/s/     Adele Hedges
        Chief Justice

Panel consists of Chief Justice Hedges and Justices Anderson and Christopher.

15