**Opinion issued October 10, 2013**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-13-00121-CV

————————————

**THE METHODIST HOSPITAL (INDIVIDUALLY AND AS SUCCESSOR TO THE METHODIST HOSPITAL CARE SYSTEM, A/K/A THE METHODIST HOSPITAL SYSTEM), TMH PHYSICIAN ORGANIZATION, AND THE METHODIST HOSPITAL RESEARCH INSTITUTE, Appellants**

**V.**

**ANTHONY J. HALAT, M.D., Appellee**

On Appeal from the 164th District Court
Harris County, Texas
Trial Court Case No. 2012-08299

**O P I N I O N**

Appellants, The Methodist Hospital System, The Methodist Hospital, The

Methodist Hospital Physician Organization, and The Methodist Hospital Research

Institute,[1] appeal the trial court's order denying their motion to dismiss for failure to serve an expert report in favor of appellee, Dr. Anthony J. Halat. Methodist Hospital argues the trial court abused its discretion when it denied the motion because Dr. Halat's claims were health care liability claims, and, accordingly, an expert report had to be filed within 120 days of Dr. Halat's petition.

We affirm.

## Background

Around July 1, 2005, The Methodist Hospital hired Dr. Halat to work in its medical intensive care unit. Dr. Halat alleges that he accepted the position with the hospital largely because of the benefits it offered, including five weeks of paid vacation each year. These benefits were outlined in a Letter Agreement of Employment, dated June 6, 2005. The employment agreement was amended on several subsequent occasions. The final amended version provided that Methodist Hospital or Dr. Halat "may, with one hundred twenty (120) days advance written notice to the other party, terminate this Agreement without cause." When he resigned, Dr. Halat explained in his resignation letter that this amendment removed a provision allowing termination of the contract for cause, leaving only the

---

[1] For purposes of this appeal, no distinction has been made between any of the defendants The Methodist Hospital System, The Methodist Hospital, The Methodist Hospital Physician Organization, and The Methodist Hospital Research Institute. Accordingly, we refer to the appellants collectively as "Methodist Hospital."

2

without-cause 120-day-notice provision and a 90-day-notice provision applicable at the end of the contract year.

On September 16, 2010, Dr. Halat sent Methodist Hospital his resignation letter. In the letter, Dr. Halat stated that he was providing 120-day notice to terminate the agreement without cause. He also wrote that he was applying 680 hours of his accrued paid time off to those 120 days. As a result, Dr. Halat explained that he would not work any further shifts including any already scheduled. Even applying this paid time off, Dr. Halat had an additional 272 hours of accrued time. In his resignation letter, he stated that he wanted to resolve how he would be compensated for the remaining accrued time.

Most of the resignation letter, which is just over 4 pages long, is an explanation by Dr. Halat of why he was resigning. One reason was because he was never allowed to use any of the vacation time he accrued, despite being promised five weeks of paid time off per year. He claimed that, whenever he requested time off, it was always denied.

Another reason was that he felt the intensive care unit was poorly run. He felt that the intensive work hours, the discontinuity of the doctors treating each patient, and the poor communication of the status of patients created a dangerous situation for the patients. He asserted that, despite repeatedly bringing his concerns to the attention of Methodist Hospital, the hospital had taken no action to

3

correct any of them. As a result, he decided he could "not in good conscience participate" in the work in the intensive care unit.

The day after Dr. Halat submitted his resignation letter, Methodist Hospital informed Dr. Halat that it was terminating his employment immediately, for cause, and that he would not receive any further compensation.

Dr. Halat later brought suit against Methodist Hospital, asserting claims of breach of contract, quantum meruit, unjust enrichment, fraud in the inducement, and negligent misrepresentation. For the breach of contract, quantum meruit, and unjust enrichment claims, Dr. Halat sought recovery of his accrued paid time off, either for the 120-day notice period or in its entirety. For his fraud in the inducement and negligent misrepresentation claims, Dr. Halat alleged that Methodist Hospital induced him to take the job with an offer of five weeks of paid time off per year, knowing he would not be able or permitted to use it.

A little less than a year after Dr. Halat filed suit, Methodist Hospital filed a motion to dismiss, alleging that Dr. Halat's claims were health-care liability claims, requiring him to file an expert report within 120 days after filing suit. Because Dr. Halat had not filed an expert report, Methodist Hospital argued that his claims must be dismissed. Dr. Halat responded to the motion, arguing his claims were not health-care liability claims. The trial court agreed. This appeal ensued.

4

## Standard of Review

Generally, we review a district court's ruling on a motion to dismiss under Chapter 74 of the Texas Civil Practices and Remedies Code for an abuse of discretion. *See Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 877–78 (Tex. 2001). However, when the issue, as in this case, involves the applicability of Chapter 74 to the plaintiff's claims and requires an interpretation of the Texas Medical Liability Act, we apply a de novo standard of review. *Tex. W. Oaks Hosp., LP v. Williams*, 371 S.W.3d 171, 177 (Tex. 2012).

When interpreting a statute, our primary goal is to ascertain and give effect to the intent of the legislature. *F.F.P. Operating Partners, L.P. v. Duenez,* 237 S.W.3d 680, 683 (Tex. 2007). Where the statutory text is clear, we presume that the words chosen are the surest guide to legislative intent. *Presidio Indep. Sch. Dist. v. Scott,* 309 S.W.3d 927, 930 (Tex. 2010). We rely upon the definitions prescribed by the legislature and any technical or particular meaning the words have acquired. *See* TEX. GOV'T CODE ANN. § 311.011(b) (Vernon 2013). Otherwise, we apply the words' plain and common meanings, unless the legislature's contrary intention is apparent from the context or such a construction would lead to absurd results. *City of Rockwall v. Hughes,* 246 S.W.3d 621, 625–26 (Tex. 2008).

**Analysis**

To determine if the trial court properly denied Methodist Hospital's motion to dismiss, first we must decide if Dr. Halat's claims are related to health care and fall within Chapter 74 of the Texas Civil Practices and Remedies Code. If Dr. Halat's claims fall within Chapter 74, then he was required to file an expert report within 120 days of the petition and failure requires dismissal of his claims. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a)–(b) (Vernon 2012).

Section 74.001(a)(13) of the Texas Civil Practices and Remedies Code provides a health care liability claim is

> a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately result in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.

TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(13) (Vernon 2012). This definition consists of three elements:

> (1) the defendant is a health care provider or physician; (2) the claimant's cause of action is for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, health care, or safety or professional or administrative services directly related to health care; and (3) the defendant's alleged departure from accepted standards proximately caused the claimant's injury or death.

*Loaisiga v. Cerda*, 379 S.W.3d 248, 255 (Tex. 2012). It is undisputed that all of the defendants are health care providers. Our focus remains, then, on whether the last two elements were met.

In determining whether the claim alleged is for any kind of claim enumerated in the second element, "we look to the facts upon which relief is sought, rather than the manner in which the cause of action is pleaded." *Shanti v. Allstate Ins. Co.*, 356 S.W.3d 705, 711 (Tex. App.—Houston [14th Dist.] 2011, pet. denied) (citing *Yamada v. Friend*, 335 S.W.3d 192, 196–97 (Tex. 2010)). Artful pleading does not change the nature of the claim. *Yamada*, 335 S.W.3d at 196.

Dr. Halat asserted claims of breach of contract, quantum meruit, unjust enrichment, fraud in the inducement, and negligent misrepresentation. For all of his claims, Dr. Halat alleges that his employment agreement with Methodist Hospital gave him five weeks of paid time off per year and that, during the approximately five years he worked for Methodist Hospital, he was never permitted to use any of his paid time off. In addition, for his claims of breach of contract, quantum meruit, and unjust enrichment, Dr. Halat alleges that he resigned pursuant to the without-cause termination provision of his employment agreement, that he attempted to apply his paid time off to the 120-day notice period, that Methodist Hospital terminated him effective immediately as a result, and that

Methodist Hospital has refused to reimburse him for any of his five years of accrued paid time off. Finally, for his fraud in the inducement and negligent misrepresentation claims, Dr. Halat also alleges that Methodist Hospital knew he would not be able to use his paid time off during his employment but represented to him that he would.

None of these allegations concern the "treatment, lack of treatment, or other claimed departure from accepted standards of medical care, health care, or safety or professional or administrative services directly related to health care." *Loaisiga*, 379 S.W.3d at 255. Methodist Hospital argues that Dr. Halat's claims should nevertheless be considered health care liability claims because the reason for his resignation included—in addition to his inability to take time off—his concerns about the health and safety of the patients in the intensive care unit due to understaffing and poor communication among the employees in different shifts. Methodist Hospital argues, "One of the primary points in dispute between Methodist [Hospital] and Dr. Halat is whether Dr. Halat, a Methodist employee, fabricated his patient safety claims in bad faith, as a pretext to justify his 'resignation' as a staff physician in the intensive care unit with just a few hours['] notice."

For Dr. Halat's breach of contract claim, regardless of how strongly the parties dispute whether Dr. Halat fabricated his complaints about patient health and

8

safety, it has no bearing on the claim. Dr. Halat explains that he terminated his employment agreement under the agreement's without-cause termination provision. He further explains that an earlier for-cause termination provision had been removed before the time of Dr. Halat's resignation. If, under the terms of the without-cause termination provision, Dr. Halat properly and effectively provided notice of his resignation, his reasons for resigning are irrelevant. If, in contrast, Dr. Halat did not properly and effectively provide notice of his resignation, then he breached the employment agreement and it will need to be determined what effect this breach has on any obligation Methodist Hospital may have had to pay Dr. Halat for previously-accrued paid time off. Either way, Dr. Halat's reasons for terminating or breaching the agreement are not relevant to his contractual claim.

Similarly, Dr. Halat's quantum meruit claim and unjust enrichment claim— both pleaded in the alternative to Dr. Halat's breach of contract claim—concern only whether his accrued paid time off is a benefit for which he has a reasonable expectation to be compensated after Methodist Hospital received the benefit of his services. *See Speck v. First Evangelical Lutheran Church of Hous.*, 235 S.W.3d 811, 815 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (holding elements for quantum meruit are (1) valuable services rendered (2) for defendant (3) who accepted services (4) under such circumstances as would reasonably notify defendant that plaintiff expected to be paid); *Heldenfels Bros., Inc. v. City of*

*Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992) (holding "[a] party may recover under the unjust enrichment theory when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage"). The validity of Dr. Halat's concerns over the health and safety of Methodist Hospital's intensive care unit's patients is not relevant to this inquiry.

Finally, Dr. Halat's fraud in the inducement claim and negligent misrepresentation claim concern only Methodist Hospital's representations about being able to take five weeks of paid time off per year. They do not address or concern any matters relating to the patients' health and safety. Resolution of the dispute regarding patient health and safety that Methodist Hospital claims to exist, then, has no bearing on Dr. Halat's fraud in the inducement claim or negligent misrepresentation claim.

We hold that Dr. Halat's claims are not "cause[s] of action . . . for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, health care, or safety or professional or administrative services directly related to health care." *Loaisiga*, 379 S.W.3d at 255. Accordingly, we overrule Methodist Hospital's sole issue.

10

## Conclusion

We affirm the trial court's order denying Methodist Hospital's motion to dismiss.

Laura Carter Higley
Justice

Panel consists of Justices Keyes, Higley, and Massengale.

11