**Ahmad H. AHMADI, M.D., P.L.L.C., d/b/a Avante Plastic Surgery, Appellant**

v.

**Renetta MOSS, Appellee**

**NO. 14-16-00942-CV**

Court of Appeals of Texas, Houston (14th Dist.).

Opinion filed August 17, 2017

Joel Randal Sprott, Tina E. Ohanian, Houston, TX, for Appellant.

Stanford Scott Boyd, William Clark Boyd, Richard Fason, Houston, TX, for Appellee.

Panel consists of Justices Christopher, Busby, and Jewell.

## OPINION

Tracy Christopher, Justice

This is an interlocutory appeal from an order denying a motion to dismiss under Chapter 74 of the Civil Practice and Remedies Code. The question presented is whether Renetta Moss, the plaintiff below, asserted a health care liability claim when she alleged that Dr. Ahmad Ahmadi, her health care provider, had failed to perform a surgical procedure as promised. We conclude that Moss did assert a health care liability claim, for which a medical expert report was required. Because Moss never served Dr. Ahmadi with the required report, Moss's suit is subject to mandatory dismissal. We therefore reverse the trial court's order and remand for additional proceedings consistent with this opinion.

## BACKGROUND

Moss filed an original petition against Dr. Ahmadi, asserting causes of action that she labeled as breach of contract, breach of implied contract, and unjust enrichment. The factual basis for each of these claims arises out of an agreement to perform cosmetic surgery. Moss had sought and prepaid for a breast reduction and a liposuction of the axilla, which is the area around the armpit. Moss alleged in her petition that Dr. Ahmadi "scheduled a surgery but did not perform all of the surgery services promised." Moss did not identify what specific services that Dr. Ahmadi allegedly failed to perform. However, she indicated that Dr. Ahmadi was prepared to provide additional surgical services for free, but only in the event that Moss paid another facility fee. Not wanting to pay the fee, Moss sought reimbursement for the services that Dr. Ahmadi allegedly failed to perform.

In his original answer, Dr. Ahmadi generally denied Moss's allegations and averred that her three causes of action amounted to a single health care liability claim, which was subject to the requirements of Chapter 74. Moss did not respond to this averment or otherwise serve Dr. Ahmadi with a medical expert report. After the expiration of 120 days from the filing of his answer, Dr. Ahmadi moved to dismiss Moss's suit with prejudice.

Moss filed a response to Dr. Ahmadi's motion, in which she clarified the factual basis of her claims. Moss explained that Dr. Ahmadi "provided the breast reduction services but did not provide the liposuction despite the agreement to do so." Moss also

clarified that she was seeking only economic damages, not noneconomic damages arising out of a physical injury. She argued that Dr. Ahmadi's motion should be denied because her complaint sounded in contract and was tangential to the rendition of medical services.

Dr. Ahmadi filed a reply, asserting that he had performed both surgeries as he had agreed. He also contended that Moss was dissatisfied because she wanted more liposuction, not because the liposuction was never performed.

The trial court denied Dr. Ahmadi's motion, and this interlocutory appeal followed.

## ANALYSIS

■ The Texas Medical Liability Act provides that a claimant in a "health care liability claim" must serve on a defendant an expert report no later than 120 days after the date of the defendant's original answer. *See* Tex. Civ. Prac. Rem. Code § 74.351(a). If the claimant does not serve the report within the specified period, the trial court must dismiss the claim on the defendant's motion and award the defendant reasonable attorney's fees. *Id.* § 74.351(b).

The question here is whether Moss asserted a health care liability claim within the meaning of the Act. To resolve that question, we must engage in a matter of statutory interpretation, for which our review is de novo. *See Loaisiga v. Cerda*, 379 S.W.3d 248, 254–55 (Tex. 2012).

The Act defines a health care liability claim as:

a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly relat-ed to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.

Tex. Civ. Prac. & Rem. Code § 74.001(a)(13).

■ This definition has three essential elements: (1) the defendant must be a health care provider or physician; (2) the claimant's cause of action must be for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, health care, or safety or professional or administrative services directly related to health care; and (3) the defendant's alleged departure from these accepted standards must have proximately caused the claimant's injury or death. *See Loaisiga*, 379 S.W.3d at 255.

The parties agree that Dr. Ahmadi, the defendant below, is a health care provider or physician. Thus, the first element is satisfied.

The parties do not agree, however, about the other two elements, which concern the claimant's "cause of action" and whether the claimant has suffered an "injury." We examine these two elements in turn.

■ *Cause of Action.* Dr. Ahmadi argues that Moss's causes of action essentially complain about the "lack of treatment," putting them squarely within the definition of a health care liability claim. *See* Tex. Civ. Prac. & Rem. Code § 74.001(a)(13). Moss counters that her causes of action are only about billing for services that were paid for but never performed, meaning that they sound strictly in contract.

■ When deciding whether a cause of action is a health care liability claim, we look at the facts underlying the cause of action, not how the cause of action is labeled. *See Yamada v. Friend*, 335 S.W.3d 192, 196 (Tex. 2010). A plaintiff cannot

avoid the requirements of the Act through artful pleading or by splitting and splicing a health care liability claim into other causes of action with differing standards of care, damages, and procedures. *Id.* at 197.

The scope of our review is "the entire court record," including the pleadings, motions and responses, and any relevant evidence properly admitted. *See Loaisiga*, 379 S.W.3d at 258. If we determine that the cause of action "is against a physician or health care provider and is based on facts implicating the defendant's conduct during the course of a plaintiff's care, treatment, or confinement," then we must presume that the cause of action is a health care liability claim, which the plaintiff has the burden of rebutting. *Id.* at 256; *Hopebridge Hosp. Houston, L.L.C. v. Lerma*, 521 S.W.3d 830, 836, 2017 WL 2125678, at *4 (Tex. App.—Houston [14th Dist.] 2017, no pet.). Also, "if expert medical or health care testimony is necessary to prove or refute the merits of the claim against a physician or health care provider," then we must conclude that the cause of action is a health care liability claim. *See Tex. W. Oaks Hosp., LP v. Williams*, 371 S.W.3d 171, 182 (Tex. 2012).

The facts underlying Moss's suit are straightforward. Moss alleges that she paid Dr. Ahmadi for a breast reduction and a liposuction of the axilla, but that Dr. Ahmadi only performed the breast reduction. If true, these facts implicate Dr. Ahmadi's conduct during the course of Moss's treatment. Accordingly, we presume that Moss has asserted a health care liability claim. *See Loaisiga*, 379 S.W.3d at 256.

The facts also demonstrate that Moss's suit is about a "lack of treatment"—i.e., Dr. Ahmadi's failure to perform the liposuction. *Cf. Access Orthodontics of E. 7th Street, P.A. v. Jaimes*, No. 03-15-00081-CV, 2015 WL 4508946, at *2 (Tex. App.—Austin July 23, 2015, no pet.) (mem. op.) (an orthodontist's failure to remove braces after the claimant had already paid for the removal represented a health care liability claim for "lack of treatment"). This failure represents a "claimed departure from accepted standards of … health care." *See* Tex. Civ. Prac. & Rem. Code § 74.001(a)(13) (defining "health care liability claim"); *id.* § 74.001(a)(10) (defining "health care" as "any act or treatment performed or furnished, or that should have been performed or furnished, by any health care provider for, to, or on behalf of a patient").

Moss contends that her suit does not involve an alleged deviation from the standard of care, citing this court's decision in *Shanti v. Allstate Ins. Co.*, 356 S.W.3d 705 (Tex. App.—Houston [14th Dist.] 2011, pet. denied). In *Shanti*, a group of insurance companies sued a group of health care providers, alleging that the providers had conspired to defraud the insurance companies in a kickback scheme with personal injury attorneys. *Id.* at 713. The providers argued that the suit fell within the ambit of Chapter 74 because the insurance companies alleged that the providers had charged for medical procedures that were unnecessary and never performed. *Id.* at 712. In rejecting that argument, we explained that the insurance companies did not qualify as "claimants" under Chapter 74 because they were not natural persons or a decedent's estate, which is how the term "claimant" is statutorily defined, nor were the insurance companies asserting subrogation rights on behalf of a patient. *Id.* at 713–14 (citing Tex. Civ. Prac. & Rem. Code § 74.001(a)(2)). We also explained that the insurance companies could not have asserted a health care liability claim because the underlying nature of their suit was that the providers had engaged in a "complicated, multi-level

scheme" to commit fraud; the complaint was "tangential" to the rendition of medical services; and "medical expert testimony would not be required to establish that [the providers] were willing participants in a conspiracy to commit fraud." *Id.* at 713 (citing *Pallares v. Magic Valley Elec. Co-op., Inc.*, 267 S.W.3d 67 (Tex. App.—Corpus Christi 2008, pet. denied)).

Moss's suit is distinguishable from *Shanti* on at least four grounds.

First, Moss is a natural person, which means that she is a claimant under Chapter 74, assuming that all elements of a health care liability claim are satisfied. *See* Tex. Civ. Prac. & Rem. Code § 74.001(a)(2).

Second, the underlying nature of her suit does not pertain to fraud.

Third, her complaint is not tangential to the rendition of medical services. Unlike the insurance companies in *Shanti*, who did not receive any medical services from the providers, Moss was an actual patient of Dr. Ahmadi, and Moss's complaint is that Dr. Ahmadi failed to provide a service directly to her during the course of her treatment.

And fourth, medical expert testimony would be needed to prove or refute the merits of Moss's claim that Dr. Ahmadi actually failed to provide that service. *See Tex. W. Oaks Hosp.*, 371 S.W.3d at 182.

Even though Moss has cast her causes of action in contract terms, we conclude that they actually complain about the "lack of treatment, or other claimed departure from accepted standards of ... health care." *See* Tex. Civ. Prac. & Rem. Code § 74.001(a)(13). Thus, the second element is satisfied.

■ *Injury.* The third element of a health care liability claim is that the defendant's departure from accepted standards of care must have proximately resulted "in injury to or death of a claimant." *Id.*

The issue here centers on what types of injuries are recognized under this standard. Moss, who pleaded only for economic damages, asserts that claims such as hers do not fit within Chapter 74's meaning of injury. In her view, a claimant in a health care liability claim must have suffered some type of personal injury, for which noneconomic damages are recoverable. Dr. Ahmadi disagrees with that point, and responds that Moss should not be allowed to avoid the requirements of Chapter 74 through artful pleading.

The word "injury" is not specifically defined in Chapter 74, which means that it must be given "such meaning as is consistent with the common law." *Id.* § 74.001(b). Black's Law Dictionary gives the term an expansive definition: "The violation of another's legal right, for which the law provides a remedy; a wrong or injustice." Black's Law Dictionary 789 (7th ed. 1999). Under this definition, the term would seem to encompass any claim arising out of the defendant's deviation from the standard of care, regardless of whether the claimant was seeking economic or non-economic damages.

A broad understanding of "injury" also finds support in the larger definition of "health care liability claim," which a plaintiff may assert "whether [her] claim or cause of action sounds in tort or contract." *See* Tex. Civ. Prac. & Rem. Code § 74.001(a)(13). This statutory definition suggests that claims for economic damages can still amount to health care liability claims because, generally speaking, claims sounding in contract can only result in economic damages. Indeed, this court previously determined that a plaintiff had asserted a health care liability claim even though she had only pleaded for economic damages. *See Armstrong v. Robinsons,*

No. 14-08-01077-CV, 2010 WL 4817100, at *1–2 (Tex. App.—Houston [14th Dist.] Nov. 23, 2010, no pet.) (mem. op.) (claimant sought a "full refund" for ill-fitting dentures).

We recognize, however, that Austin's Third Court of Appeals has reached the different conclusion that purely economic damages are not sufficient to support a health care liability claim under Chapter 74. That court explained:

> For a cause of action to be a health-care-liability claim within the purview of the TMLA, the "injury" that proximately results from the alleged wrongful conduct must involve more tha[n] simply economic harm. Rather, it must also involve some type of personal injury, including that which would entitle the plaintiff to seek to recover noneconomic damages.

*PM Mgmt.-Trinity NC, LLC v. Kumets,* 368 S.W.3d 711, 719 (Tex. App.—Austin 2012), *aff'd in part, rev'd in part on other grounds,* 404 S.W.3d 550 (Tex. 2013) (per curiam).

Moss urges us to follow the Third Court of Appeals, but we are bound by our own precedent, which we also believe is more faithful to the text and structure of Chapter 74. The Legislature defined a health care liability claim with reference to "injury," not to "personal injury." *See* Tex. Civ. Prac. & Rem. Code § 74.001(a)(13). Had the Legislature intended to qualify the type of injury that defined a health care liability claim, it could have used the phrase "personal injury" instead, as it did in another provision in Chapter 74. *Id.* § 74.004(a). Or the Legislature could have used the phrase "bodily injury," which appears in another Chapter 74 definition. *Id.* § 74.001(a)(2). Or the Legislature could have used the phrases "economic damages" and "noneconomic damages," both of which are already defined terms under Chapter 74. *Id.* § 74.001(a)(6), (20). But because the Legislature did not follow any of these approaches, we must presume that it intended for "injury" to be construed broadly, without Moss's proposed qualifications. *See Shanti,* 356 S.W.3d at 714 n.4 (recognizing that Chapter 74 can apply to claims of non-physical injuries); *Victoria Gardens of Frisco v. Walrath,* 257 S.W.3d 284, 288 (Tex. App.—Dallas 2008, pet. denied) (rejecting argument that a plaintiff can only assert a health care liability claim if she seeks traditional tort damages).

We conclude that Moss has alleged an injury—economic damages for services paid for and never performed—and that this injury is the proximate result of Dr. Ahmadi's alleged departure from the standard of care. *See Armstrong,* 2010 WL 4817100, at *1–2. Thus, the third element is satisfied.

Having determined that all three elements are satisfied, we conclude that Moss asserted a health care liability claim against Dr. Ahmadi. Because Moss did not serve Dr. Ahmadi an expert report as required by Chapter 74, we also conclude that the trial court erred by denying Dr. Ahmadi's motion to dismiss.

## CONCLUSION

We reverse the trial court's order and remand with instructions for the trial court to grant Dr. Ahmadi's motion to dismiss, determine the amount of Dr. Ahmadi's reasonable attorney's fees, and render judgment in favor of Dr. Ahmadi in the amount of those reasonable attorney's fees. *See* Tex. Civ. Prac. & Rem. Code § 74.351(b).