**TEXAS WEST OAKS HOSPITAL, LP and Hospital Holdings LLC, Appellants,**

v.

**Frederick WILLIAMS, Appellee.**

**No. 14–10–00091–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

June 24, 2010.

Ryan Lee Clement, Houston, for appellants.

Muhammad Suleiman Aziz, Benny Agosto Jr., Robert S. Kwok, Houston, for appellee.

Panel consists of Chief Justice HEDGES and Justices YATES and BOYCE.

## OPINION

LESLIE B. YATES, Justice.

Appellants Texas West Oaks Hospital, LP and Hospital Holdings LLC (collectively "West Oaks") appeal from the trial court's order denying the motion to dismiss appellee Frederick Williams's claims for failure to file an expert report under chapter 74 of the Civil Practice and Remedies Code. We affirm.

## BACKGROUND

Mario Vidaurre, a man with a history of paranoid schizophrenia and violent outbursts, was admitted to West Oaks for psychiatric treatment in June 2007. Based on his history and conduct at the facility, Vidaurre was placed on one-to-one observation, and Williams was one of the technicians assigned to observe and monitor Vidaurre's behavior. During Williams's shift, Vidaurre became agitated, and in an effort to calm Vidaurre, Williams took him to a fenced-in area behind the hospital to smoke a cigarette. The door locked behind them, Williams had no access to any type of emergency alarm or call button, and there is no monitored security camera covering that area. While in the smoking area, Vidaurre and Williams had a physical altercation; Williams was injured, and Vidaurre died.

Vidaurre's estate sued West Oaks and later Williams as well, alleging failure to properly treat, care for, and assess the medical situation of Vidaurre. Williams cross-claimed against West Oaks, alleging that West Oaks was negligent in the following manner:

a. Failing to properly train Williams to work at West Oaks' premises, including warning him of the inherent dangers of working with patients with the conditions and tendencies that Mario Vidaurre possessed;

b. Failing to adequately supervise West Oaks' employees, including Williams, while working with patients with conditions and tendencies that Mario Vidaurre possessed;

c. Failing to provide adequate protocol to avoid and/or decrease the severity of altercations between its employees, such as Williams, and patients;

d. Failing to provide its employees, including Williams, with adequate emergency notification devices to alert other employees of altercations in which assistance is needed;

e. Failing to warn Williams of the dangers that West Oaks knew or should have known were associated with working with patients such as Mr. Vidaurre; and

f. Failing to provide a safe workplace for its employees, including Williams.

West Oaks filed a motion to dismiss Williams's cross-claims because he did not file an expert report under section 74.351(a) of the Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(a)-(b) (Vernon Supp. 2009). The trial court denied the motion, and West Oaks has brought an interlocutory appeal challenging the trial court's order. *See id.* § 51.014(a)(9) (Vernon 2008).

## ANALYSIS

Chapter 74 of the Civil Practice and Remedies Code requires a "claimant" bringing a "health care liability claim" to file an expert report within 120 days of filing the claim. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a). A "claimant" is defined as "a person, including the decedent's estate, seeking or who has sought recovery of damages in a health care liability claim," and "[a]ll persons claiming to have sustained damages as the result of the bodily injury or death of a single person are considered a single claimant." *Id.* § 74.001(a)(2) (Vernon 2005). A "health care liability claim" is "a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in contract or tort." *Id.* § 74.001(a)(13). Finally,

"health care" means "any act or treatment performed or furnished, or that should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement." *Id.* § 74.001(a)(10).

If a claimant with a health care liability claim does not comply with the expert report requirement, the trial court must dismiss the claim upon request of the defendant. *Id.* § 74.351(b). When, as here, the trial court rules on a motion to dismiss based on statutory interpretation, our review is de novo. *See Smalling v. Gardner,* 203 S.W.3d 354, 363 (Tex.App.-Houston [14th Dist.] 2005, pet. denied). West Oaks argues that Williams was required to comply with chapter 74 because he is a claimant and his claims constitute health care liability claims. We need not determine whether Williams is a claimant because we conclude his claims are not health care liability claims.

A claim is a health care liability claim if it alleges a breach of accepted standards of medical care or if the claim is inseparable from the rendition of medical care. *See Marks v. St. Luke's Episcopal Hosp.,* 2009 WL 2667801 (Tex.2009); *Diversicare Gen. Partner, Inc. v. Rubio,* 185 S.W.3d 842, 848 (Tex.2005). In determining whether a claim is inseparable from the rendition of medical care, we consider factors such as (1) whether specialized knowledge of a medical expert may be necessary to prove the claim, (2) whether a specialized standard in the health care community applies to the alleged circumstances, and (3) whether the negligent act involves medical judgment related to the patient's care or treatment. *Marks,* 2009 WL 2667801, at *4 . The source of the duty allegedly breached is also a factor to be considered. *See id.* at *7 (considering the "source of the negligence" in analyzing

whether claim is a health care liability claim); *Diversicare,* 185 S.W.3d at 851 ("In addition, we focus on the essence of Rubio's claim and consider the alleged wrongful conduct and the duties allegedly breached" in determining if claim is a health care liability claim). We look to the allegations in the petition to determine the gravamen of the complaint, regardless of how the complaint is labeled. *See Marks,* 2009 WL 2667801, at *8; *Diversicare,* 185 S.W.3d at 854.

Williams's allegations involve West Oaks's breaches of duty to him regarding his safety. Specifically, Williams claims that West Oaks did not train, warn, or supervise him regarding working with violent patients such as Vidaurre, did not provide proper safety protocols or equipment to use in an altercation with a violent patient, and generally failed to provide a safe workplace. No Texas case appears to have addressed whether the claims of a health care provider's employee in these circumstances constitute health care liability claims.

Though chapter 74 provides that health care liability claims include breaches of safety standards, safety claims must be directly related to and inseparable from health care. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(13) (providing that health care liability claims include causes of action for departures from accepted standards of "safety ... directly related to health care"); *Marks,* 2009 WL 2667801, at *4 ("[A]n accepted standard of safety is implicated under the Act when the unsafe condition or thing is an inseparable or integral part of the patient's care or treatment."). The safety prong is not so broad as to apply to any injury that occurs in a medical setting. *See Marks,* 2009 WL 2667801, at *4. Williams does not claim that West Oaks used improper medical judgment and breached a standard of med-

ical care toward a patient that caused him injury.[1] Rather, he alleges that West Oaks breached a duty owed to him by his employer to provide a safe workplace. Such claims are common in the employment context and flow from the employment relationship, not from any medical relationship giving rise to a medical standard of care. See *Kroger Co. v. Elwood*, 197 S.W.3d 793, 794 (Tex.2006) (discussing employer's duty to use ordinary care to provide a safe workplace, including warning of hazards and providing appropriate safety equipment); *LMC Complete Auto., Inc. v. Burke*, 229 S.W.3d 469, 476 (Tex. App.-Houston [1st Dist.] 2007, pet. denied) (stating that employer's duty of reasonable care to provide safe workplace includes warning, safety equipment, training, and supervision). West Oaks's medical judgment is not at issue in determining whether West Oaks breached its duty to provide a safe workplace for its employee, Williams.

West Oaks argues that Williams's claims are inseparable from health care because Vidaurre's claims, which everyone agrees for purposes of this appeal are health care liability claims, arose from the same facts and indeed mirror Williams's claims. Williams's and Vidaurre's claims are related, but that is not the same as being inseparable. The source of the duty giving rise to the two sets of claims is distinct, as is the nature of the duty. See *Diversicare*, 185 S.W.3d at 850–51 (distinguishing between hospital's duty to patients and its duty to invitees); *Allen v. Connolly*, 158 S.W.3d 61, 65 (Tex.App.-Houston [14th Dist.] 2005, no pet.) (stating that employees are invitees of employer to whom em-

ployer owes duty to use reasonable care to provide a safe workplace); see also *Marks*, 2009 WL 2667801, at *8; *Diversicare*, 185 S.W.3d at 851. Therefore, West Oaks could theoretically prevail against Vidaurre because it did not breach a duty to him and yet still be liable to Williams for failing to provide a safe workplace. This demonstrates how the claims are indeed separable.

West Oaks further asserts that Williams's claims are health care liability claims because expert testimony is necessary to establish whether its safety protocols and procedures were proper. Expert testimony might be required, but not necessarily *medical* expert testimony. See *Diversicare*, 185 S.W.3d at 848 ("The necessity of expert testimony from a *medical or health care professional* to prove a cause of action may also be an important factor in determining whether a cause of action is an inseparable part of the rendition of medical or health care services." (emphasis added)). Williams's allegations involve security and safety issues that can arise in other settings, such as jails and prisons, and may not require a medical expert. Furthermore, even if medical expert testimony is necessary to establish Williams's claims, the need for expert testimony is not dispositive as to whether a claim is a health care liability claim. See *id.* (noting that the need for expert testimony "may" be an important factor); *NCED Mental Health, Inc. v. Kidd*, 214 S.W.3d 28, 33 (Tex.App.-El Paso 2006, no pet.) (stating that the need for medical expert testimony is not dispositive in determining whether a claim is subject to

---

1.  West Oaks relies heavily on *Wilson N. Jones Memorial Hospital v. Ammons*, 266 S.W.3d 51 (Tex.App.-Dallas 2008, pet. filed), in which claims of a patient's wife, who was injured by another patient who was violent, were determined to be health care liability claims. *Wil-*

*son* is inapplicable here because it did not involve an employment situation and because, unlike here, the plaintiff's injuries were allegedly caused by the failure of treatment to a patient. *See id.* at 64.

chapter 74); *see also Nat'l Convenience Stores Inc. v. Matherne,* 987 S.W.2d 145, 149 (Tex.App.-Houston [14th Dist.] 1999, no pet.) (explaining that expert testimony cannot create a duty where one does not exist).

Finally, we note that our conclusion is consistent with the legislative purpose of the expert report requirement. The legislature enacted the expert report requirement for health care liability claims as part of a larger scheme to address the crisis in the availability of medical malpractice insurance. *See Marks,* 2009 WL 2667801, at at *2, 3; *Diversicare,* 185 S.W.3d at 846–47. There is no indication that health care providers are facing similar difficulty in obtaining insurance to cover negligence claims by their employees. *Cf. Marks,* 2009 WL 2667801, at *4 (discussing the legislative intent to address the medical malpractice insurance crisis and noting that "neither the statute nor the historical background suggests that physicians or health care providers were similarly challenged when obtaining commercial general liability insurance coverage for ordinary, non-medical accidents on their premises"). Expanding chapter 74's requirements to other areas of tort law is properly left to the legislature. *See Omaha Healthcare Ctr., L.L.C. v. Johnson,* 246 S.W.3d 278, 284 (Tex.App.-Texarkana 2008, pet. filed).

Williams does not allege that West Oaks breached a duty to any patient but rather breached an independent duty owed to him as an employee. This case involves a workplace injury, not medical malpractice, and the fact that the injury occurred in a hospital does not change that. *See Marks,* 2009 WL 2667801, at *8 ("[I]t is not the identities of the parties or the place of injury that defines the claim."). The trial court did not err in denying West Oaks's motion to dismiss Williams's claims for

failing to file an expert report under chapter 74. We affirm the trial court's order.