



# MEMORANDUM OPINION

No. 04-11-00172-CV

**PSYCHIATRIC SOLUTIONS, INC.** d/b/a Mission Vista Behavioral Health Center and
Mission Vista Behavioral Health Services, Inc. d/b/a Mission Vista Behavioral Health Center,
Appellants

v.

Kenneth **PALIT**,
Appellee

From the 166th Judicial District Court, Bexar County, Texas
Trial Court No. 2010CI05075
Honorable Solomon Casseb, III, Judge Presiding

Opinion by: Karen Angelini, Justice

Sitting: Karen Angelini, Justice
Sandee Bryan Marion, Justice
Steven C. Hilbig, Justice

Delivered and Filed: March 28, 2012

AFFIRMED

At issue in this appeal is whether Kenneth Palit's claims brought against his employer are health care liability claims subject to chapter 74's expert report requirement. Because we hold that Palit's claims are not health care liability claims, we affirm the trial court's order denying the motion to dismiss pursuant to section 74.351(b) of the Texas Civil Practice and Remedies Code.

**BACKGROUND**

On March 24, 2010, Palit sued Psychiatric Solutions, Inc. and Mission Vista Behavioral Health Services, Inc. d/b/a Mission Vista Behavioral Health Center (collectively "Mission Vista") for negligence and sought damages for personal injuries. According to Palit's petition, on or about April 2, 2008, he was working for Mission Vista when "he was injured as a result of improper security of a dangerous psychiatric patient, which caused an injury to his neck, back and body generally." According to Palit, Mission Vista "failed to provide a safe working environment and failed to make sufficient precautions for [his] safety." On April 19, 2010, Mission Vista filed an answer generally denying the allegations. On December 17, 2010, Mission Vista filed a first supplemental answer, alleging as an affirmative defense that Palit's claims were health care liability claims and were therefore governed by chapter 74 of the Texas Civil Practice and Remedies Code. Also on December 17, 2010, Mission Vista filed a motion to dismiss Palit's claims for failure to serve an expert report pursuant to section 74.351(b). On February 7, 2011, the trial court denied the motion. Mission Vista then brought this interlocutory appeal.

**STANDARD OF REVIEW**

Generally, we review a trial court's ruling on a motion to dismiss a claim pursuant to section 74.351 for an abuse of discretion. *See Wilson N. Jones Mem'l Hosp. v. Ammons*, 266 S.W.3d 51, 55 (Tex. App.—Dallas 2008, pet. denied). However, when the resolution of an issue on appeal requires the interpretation of a statute, we apply a de novo standard of review. *Id.* Thus, we review de novo whether Palit's claims are health care liability claims under chapter 74. *See id.*; *Tex. W. Oaks Hosp., LP v. Williams*, 322 S.W.3d 349, 352 (Tex. App.—Houston [14th Dist.] 2010, pet. granted).

**HEALTH CARE LIABILITY CLAIMS?**

Mission Vista argues that because Palit is a claimant[1] bringing health care liability claims under chapter 74, he was required to serve an expert report under chapter 74. In response, Palit emphasizes that his suit alleges he was injured in the course and scope of his employment as a result of improper security of a dangerous psychiatric patient and Mission Vista's failure to provide a safe working environment. According to Palit, these allegations do not constitute health care liability claims because the duties Mission Vista owed Palit as an employer are distinct from the duties it owed its patient in the rendition of health care.

Section 74.351(a) requires a "claimant," not later than the 120th day after the date the petition was filed, to serve on each party or the party's attorney one or more expert reports for each physician or health care provider against whom a liability claim is asserted. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a) (West 2011). If such an expert report is not timely served, the trial court, on the motion of the affected physician or health care provider, shall dismiss the claim with prejudice. *See id.* § 74.351(b). A "claimant" under chapter 74 is "a person, including a decedent's estate, seeking or who has sought recovery of damages in a health care liability claim," and "[a]ll persons claiming to have sustained damages as the result of the bodily injury or death of a single person are considered a single claimant." *Id.* § 74.001(a)(2) (West Supp. 2011). A "health care liability claim" is

> a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.

---

[1] Because we conclude Palit's claims are not health care liability claims, we need not determine whether Palit is a claimant under chapter 74.

*Id.* § 74.001(a)(13). And, "health care" is "any act or treatment performed or furnished, or that should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement." *Id.* § 74.001(a)(10). Thus, a health care liability claim consists of three elements: (1) "a physician or health care provider must be the defendant"; (2) "the suit must be about the patient's treatment, lack of treatment, or some other departure from accepted standards of medical care or health care or safety"; and (3) "the defendant's act, omission, or other departure must proximately cause the patient's injury or death." *Marks v. St. Luke's Episcopal Hosp.*, 319 S.W.3d 658, 662 (Tex. 2010). To determine whether a claim is a health care liability claim, a court must examine the underlying nature of the claims alleged in the petition. *Id.* at 664.

In determining whether a claim is a health care liability claim, the supreme court has explained that "standards of medical care or health care [are] implicated when the negligent act or omission [is] an inseparable or integral part of the rendition of medical services." *Id.* at 664. The court further explained that "an accepted standard of safety is implicated under the MLIIA when the unsafe condition or thing, causing injury to the patient, is an inseparable or integral part of the patient's care or treatment." *Id.* Of course, in this case, we are not dealing with an injury to a patient, but an injury to an employee.

The Fourteenth Court of Appeals addressed this issue of whether claims brought by an employee for injuries suffered as a result of an unsafe workplace were health care liability claims in *Texas West Oak Hospital, LP v. Williams*, 322 S.W.3d 349, 351 (Tex. App.—Houston [14th Dist.] 2010, pet. granted).[2] In that case, the patient, Mario Vidaurre, a man with a history of paranoid schizophrenia and violent outbursts, was admitted to West Oaks for psychiatric

---

[2] The supreme court granted the hospital's petition for discretionary review and heard oral argument on November 18, 2011. No opinion has issued.

treatment and was placed on one-to-one observation. *Id.* Frederick Williams was one of the technicians assigned to observe and monitor Vidaurre's behavior. *Id.* When Vidaurre became agitated, Williams took him to a fenced-in area behind the hospital to smoke a cigarette. *Id.* The door locked behind them, and Williams did not have access to any type of emergency alarm or call button. *Id.* Further, there was not a monitored security camera covering that area. *Id.* While Vidaurre and Williams were in the smoking area, they had a physical altercation. *Id.* Williams was injured, and Vidaurre died. *Id.* Williams sued West Oaks, his employer, for negligence. *Id.* He alleged that his employer breached its duty to him regarding his safety. *Id.* at 352. Specifically, Williams claimed that West Oaks did not train, warn, or supervise him regarding working with violent patients such as Vidaurre, did not provide proper safety protocols or equipment to use in an altercation with a violent patient, and generally failed to provide a safe workplace. *Id.* Vidaurre's estate also sued West Oaks for failing to properly treat Vidaurre, failing to properly care for Vidaurre, and failing to properly assess Vidaurre's medical situation. *Id.* at 351.

West Oaks filed a motion to dismiss, arguing that Williams's claims should be dismissed pursuant to section 74.351(a) because he did not timely serve an expert report. *Id.* In holding that Williams's claims were not health care liability claims, the Fourteenth Court of Appeals noted that although chapter 74 provides that health care liability claims include breaches of safety standards, safety claims must be directly related to and inseparable from health care. *Id.* at 352. It emphasized that "[t]he safety prong is not so broad as to apply to any injury that occurs in a medical setting." *Id.* According to the court, "Williams does not claim that West Oaks used improper medical judgment and breached a standard of medical care toward a patient that caused him injury." *Id.* at 352-53. "Rather, he alleges that West Oaks breached a duty owed to him by

his employer to provide a safe workplace." *Id.* at 353. "Such claims are common in the employment context and flow from the employment relationship, not from any medical relationship giving rise to a medical standard of care." *Id.* Thus, "West Oaks's medical judgment is not at issue in determining whether West Oaks breached its duty to provide a safe workplace for its employee, Williams." *Id.*

The court noted that West Oaks argued Williams's claims were inseparable from health care because Vidaurre's claims, which everyone agreed for purposes of the appeal were health care liability claims, arose from the same facts and mirrored Williams's claims. *Id.* The court explained that while Williams's and Vidaurre's claims were related, "that is not the same as being inseparable." *Id.* According to the court, "[t]he source of the duty giving rise to the two sets of claims is distinct, as is the nature of the duty." *Id.* Thus, "West Oaks could theoretically prevail against Vidaurre because it did not breach a duty to him and yet still be liable to Williams for failing to provide a safe workplace." *Id.* "This demonstrates how the claims are indeed inseparable." *Id.*

The court also noted that West Oaks argued Williams's claims were health care liability claims because expert testimony was necessary to establish whether its safety protocols and procedures were proper. *Id.* However, the court explained that while expert testimony might be required, *medical* expert testimony might not. *Id.* The court emphasized that Williams's allegations involved "security and safety issues that can arise in other settings, such as jails and prisons, and may not require a medical expert." *Id.* Further, the court noted that even if medical expert testimony were necessary to establish Williams's claims, "the need for expert testimony is not dispositive as to whether a claim is a health care liability claim." *Id.*

Finally, the Fourteenth Court of Appeals noted that its holding was consistent with the legislative purpose of chapter 74's expert report requirement:

> The legislature enacted the expert report requirement for health care liability claims as part of a larger scheme to address the crisis in the availability of medical malpractice insurance. There is no indication that health care providers are facing similar difficulty in obtaining insurance to cover negligence claims by their employees. Expanding chapter 74's requirements to other areas of tort law is properly left to the legislature.

*Id.* at 354 (citations omitted). Thus, the court concluded that "Williams does not allege that West Oaks breached a duty to any patient but rather breached an independent duty owed to him as an employee." *Id.* Emphasizing that the case involved "a workplace injury, not medical malpractice," the court reasoned that "the fact that the injury occurred in a hospital does not change that." *Id.* Thus, the court affirmed the trial court's order denying West Oaks's motion to dismiss. *Id.*

We find the Fourteenth Court of Appeals's reasoning in *Williams* persuasive and note that Mission Vista has not provided any facts that would distinguish *Williams* from the facts presented here. Mission Vista does cite *Wilson N. Jones Memorial Hospital v. Ammons*, 266 S.W.3d 51, 63 (Tex. App.—Dallas 2008, pet. denied), "and cases cited therein" for the proposition that "all reported cases decided after *Diversicare* involving claims relating to control, supervision and/or restraint of a patient and inadequate security policies have been determined to be health care liability claims." In *Ammons*, a patient's wife was injured by another patient who was violent, and her claims were held to constitute health care liability claims. *Id.* Like the Fourteenth Court of Appeals in *Williams*, we find *Ammons* to be distinguishable. *Ammons* does not apply here "because it did not involve an employment situation and because, unlike here, the plaintiff's injuries were allegedly caused by the failure of treatment to a patient." *Williams*, 322 S.W.3d at 353 n.1.

Mission Vista also states that "[d]ecisions regarding the protection of patients, and the supervision and monitoring of staff have likewise been found to involve professional judgment and therefore are related to and part of the rendition of health care." Thus, Mission Vista argues that "claims regarding such staffing decisions are inseparable from" the rendition of health care. For support, Mission Vista cites *Christus Spohn Health System Corp. v. Sanchez*, 299 S.W.3d 868, 875 (Tex. App.—Corpus Christi 2009, pet. denied), and *Holguin v. Laredo Regional Medical Center, LP*, 256 S.W.3d 349, 356 (Tex. App.—San Antonio 2008, no pet.). However, both those cases involved a patient suing a health care provider, not an employee suing its employer for a breach of a duty owed in an employment context. *See Sanchez*, 299 S.W.3d at 872; *Holguin*, 256 S.W.3d at 351, 354-55.

Following the Fourteenth Court of Appeals's reasoning in *Williams*, we hold that Palit's claims are not health care liability claims. We therefore affirm the trial court's order denying Mission Vista's motion to dismiss.


Karen Angelini, Justice